# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 12-1340

**KERI MCGEE CORMIER**

**VERSUS**

**BRANDON LEE CORMIER**

**\*\*\*\*\*\*\*\*\***

## APPEAL FROM THE
## THIRTEENTH JUDICIAL DISTRICT COURT
## PARISH OF EVANGELINE, DOCKET NO. 66495-B
## HONORABLE J. LARRY VIDRINE, DISTRICT JUDGE
**\*\*\*\*\*\*\*\*\***

## SYLVIA R. COOKS
## JUDGE

**\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, James T. Genovese, and John E. Conery, Judges.

**AFFIRMED AND REMANDED.**

Lynette Young Feucht
440 North Second Street
Eunice, LA 70535
(337) 550-1115
**ATTORNEY FOR DEFENDANT/APPELLANT**
   Brandon Lee Cormier

Marcus L. Fontenot
516 West Magnolia Street
P.O. Box 69
Ville Platte, LA 70586
(337) 363-2388
**ATTORNEY FOR PLAINTIFF/APPELLEE**
   Keri McGee Cormier

**COOKS, Judge.**

### FACTS AND PROCEDURAL HISTORY

Brandon Lee Cormier and Keri McGee Cormier (now Carriere) were married on March 13, 1998. One child was born of that union; namely, Parker Cormier. The marriage was terminated by a Judgment of Divorce dated June 5, 2005.

By way of a consent judgment, the parties were granted joint custody of Parker, with Keri named as the primary domiciliary or custodial parent. Brandon was granted ten days per month visitation with Parker. Keri was also awarded $350.00 per month in child support.

Initially, it appears the original custody and visitation schedule worked well, and Keri even allowed Brandon a few extra days per month with Parker, the net result that both parents essentially had equal time with Parker. At the time Brandon was employed in the oil industry and worked on a fourteen day on and off schedule. Brandon and Keri also lived in close proximity with each other, which further facilitated the handling of the custody plan between the two. However, the amicable relationship between Keri and Brandon did not last.

On September 30, 2011, Brandon filed an ex parte petition to modify custody with the district court. In support of his petition, Brandon made several allegations: that Keri engaged in excessive drinking, there were acts of domestic violence in Keri's house, and that Keri engaged in inappropriate sexual situations while Parker was in her custody. On October 12, 2011, Keri filed a Rule for Modification of Child Support, Visitation and Contempt. On that same date, Brandon filed a Temporary Restraining Order and Preliminary Injunction seeking to prohibit Eric Blanchard from overnight visits with Keri while Parker was in her custody and further seeking to prevent contact between Blanchard and Parker, citing allegations of domestic violence. The district court denied the Temporary

Restraining Order. The district judge apparently did not believe Brandon's allegations concerning Keri and denied the ex parte petition. Brandon then filed a second ex parte petition to modify custody, which was also denied by the district judge.

Brandon then filed a motion to recuse Judge Thomas Fuselier, who presided over and denied the two ex parte petitions. Brandon alleged a conflict of interest "due to a close, personal relationship" between Judge Fuselier and Keri's family. Out of an abundance of caution, Judge Fuselier recused himself, and the case was transferred to a different division of the Thirteenth Judicial District Court. The matter was reset for hearing.

Prior to trial on the merits in the district court, the matter was heard by an Evangeline Parish hearing officer, who rendered certain recommendations. The hearing officer recommended no change of custody and no modification of visitation. In his written reasons, the hearing officer noted Parker "does not always tell the truth to his parents," and "it appears that [Parker] attempts to tell each parent what they want to hear." The hearing officer also believed Parker exaggerated the alleged "bad" conditions and was "playing" each parent against the other. The hearing officer did not find a material change in circumstances was proven sufficient to warrant modification of the previously rendered consent judgment awarding joint custody to Brandon and Keri.

As to the issue of child support, the hearing officer, after reviewing the submitted affidavits of income and expenses, determined Brandon's gross wages were $10,800.00 per month, and Keri's gross wages were $1,800 per month. Using the child support worksheet, the hearing officer found Brandon's monthly child support obligation was $1,785.34, and Keri's was $297.66. After giving Brandon a credit for the monthly private school expenses and a credit for maintaining Parker on his health insurance, the hearing officer recommended

3

Brandon pay Keri $1,000.00 per month in child support. Brandon filed an objection to the hearing officer's recommendations as to custody and support.

Trial on the merits was held over three days, and post-trial memoranda were filed, after which the district judge rendered written reasons for judgment. The trial court specifically found no merit in Brandon's allegations of excessive drinking on Keri's part and the existence of domestic violence in Keri's home. As to the allegations that Keri engaged in inappropriate sexual behavior while Parker was in her custody, the trial court found proof of only one incident, which occurred during a camping trip, and involved Parker hearing noises and peeking inside the camper bedroom while his mother was involved with her then boyfriend. The trial court, while accepting this event occurred, noted it was not highly unusual for couples to be discovered in sexual situations by curious children. The trial court also specifically noted the hypocrisy of Brandon's allegations of excessive drinking on Keri's part, when the evidence established he did not refrain from drinking in the presence of Parker. The trial court believed Brandon "encourage[d] Parker's disrespectful behavior with Keri and buys everything that Parker wants in an effort to outdo what Keri provides with her tighter financial resources." The trial court further found both Brandon and Keri were presently in stable, healthy relationships. It concluded Brandon failed to establish a material change of circumstances occurred and the consent judgment of November 19, 2004, as to custody was maintained.

The trial court also upheld the hearing officer's recommendation to increase Keri's child support award to $1,000.00 per month, holding Brandon responsible for all private school expenses, and maintaining Parker on his health insurance plan. In its reasons for judgment, the trial court stated it found Brandon's "efforts to change the conditions of his employment has resulted in a voluntary underemployment situation[.]"

4

A final judgment was signed, from which Brandon has timely filed this appeal. Brandon contends the trial court erred in finding a change of material circumstances was not proven warranting a modification of custody and in increasing the amount of child support awarded to Keri. For the following reasons, we affirm.

**ANALYSIS**

*I.     Custody.*

Brandon contends the trial court erred in denying a change in the custodial arrangement between he and Keri, arguing he successfully established a material change in circumstances since the previously rendered consent judgment between the parties. Where, as here, the underlying custody decree is a stipulated or consent judgment, rather than a considered decree, the party seeking modification of the decree must prove that (1) there has been a material change of circumstances since the custody decree was entered, and (2) the proposed modification is in the best interest of child. *Hensgens v. Hensgens*, 94-1200 (La.App. 3 Cir. 3/15/95), 653 So.2d 48, *writ denied*, 95-1488 (La. 9/22/95), 660 So.2d 478.

This court has previously held in *Gremillion v. Gremillion*, 07-492 (La.App. 3 Cir. 10/03/07), 966 So.2d 1228, that a trial court's determination in a child custody case is entitled to great weight and should not be disturbed absent a showing that there was a clear abuse of discretion on the part of the trial judge. It is well established a "trial court is in a better position to evaluate the best interest of the child from its observances of the parties and witnesses" and its "determination . . . will not be disturbed unless there is a clear abuse of discretion." *Hawthorne v. Hawthorne*, 96-89, p. 12 (La.App. 3 Cir. 5/22/96), 676 So.2d 619, 625, *writ denied*, 96-1650 (La. 10/25/96), 681 So.2d 365.

Both the hearing officer and the trial court issued written reasons for judgment finding no merit in Brandon's allegation of various improper behavior on

5

Keri's part. A review of the record reveals much of the support for Brandon's allegations against Keri was based on the statements made by Parker. As noted by the hearing officer, Parker has credibility issues (as many young children thrust in the middle of a custody dispute understandably develop). Both Brandon and Keri corroborated that Parker is often untruthful to his parents. While several specific allegations were made in his ex parte petitions, Brandon was unable to substantiate them at trial. The only specific example presented at trial, as set forth by the trial court in its reasons for judgment, was the camping incident.

The trial court specifically noted a large number of witnesses testified, and it took approximately 83 pages of notes during trial. A review of the witnesses' testimony indicates they had no personal or independent knowledge of the events alleged by Brandon and were relying on statements made to them by either Brandon or Parker. We find no error with the trial court's determination to accord little, if any, weight to their testimony.

Brandon also argues in brief that he has spent significantly more time with Parker in the last few years than has Keri. However, Keri pointed out on several occasions, Tammi (Brandon's current wife) would pick Parker up from school and keep him until 5:00 p.m. Keri would then take Parker home for the remainder of the evening. Thus, the days Brandon alleges he had physical custody of Parker were not accurate.

The record also supports the trial court's findings that Brandon actively "encourage[d]" Parker's disrespectful behavior towards Keri. It was established at trial that Brandon does not allow Keri to come into his house and requires that she wait in her vehicle when picking up Parker from his visits with his father. Parker also testified in court that Brandon told him he could not go to church with his mother because it would be a mortal sin for Keri to attend a church service.

Brandon argues because Keri willingly allowed him several instances of extra visitation, this amounts to a material change in circumstances from the previously entered consent judgment. In essence, Brandon contends this action on the part of Keri was a "voluntary modification" of the consent judgment to a "shared custody arrangement." We strongly disagree with this contention and shudder to think of the potential chilling effect such a conclusion would have on encouraging cooperation between parents with joint custody. Keri should not be penalized for attempting to foster an amicable relationship with her ex-spouse and to allow her son extra time with his father.

We note that La.R.S. 9:335(A)(1) provides that absent the showing of good cause, the trial court must render a joint custody implementation order when, as here, joint custody has been decreed. The implementation order shall allocate the legal authority of the parents and the time periods during which each parent shall have physical custody of the children to assure continuing contact with both parents. La.R.S. 9:335(A)(2). Here, the record does not contain the requisite implementation order. Accordingly, we shall remand this case to the trial court to establish a joint custody implementation order.

## II. Support.

The standard of review for child support awards is well established in this circuit and others. "The trial court has great discretion in decisions concerning modifications of child support decrees, and such decisions will not be disturbed on appeal absent clear abuse of discretion. *Stelly v. Stelly*, 02-113 (La.App. 3 Cir. 6/26/02), 820 So.2d 1270." *Rougeau v. Rougeau*, 02-484, p. 2 (La.App. 3 Cir. 10/30/02), 829 So.2d 1125, 1126.

We note Brandon does not question the methodology used by the hearing officer in setting forth the parties' respective child support amounts. Instead, he argues the support award should be terminated if he is named domiciliary parent,

7

or, in the alternative, the support award should be calculated using his new revised salary figure.

The record throughout these proceedings indicated Brandon worked a fourteen days on and off schedule offshore. It was not until after trial commenced that Brandon stated he is no longer working offshore, and his salary is $40,000.00 less per year. The trial court was dubious of this new arrangement and specifically believed Brandon's "efforts to change the conditions of his employment has resulted in a voluntary underemployment situation[.]" Brandon produced no witnesses nor check stubs to support this alleged new work schedule and revised salary, relying only on his self-serving testimony. The trial court did not err in rejecting, as unreliable, Brandon's undocumented wage reduction.

## DECREE

For the foregoing reasons, the trial court's judgment is affirmed. This matter is remanded to the district court for the purpose of rendering a joint custody implementation order. Costs of this appeal are assessed to appellant, Brandon L. Cormier.

**AFFIRMED AND REMANDED.**