# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 17-875


DANIELLE GANAWAY

VERSUS

KYLE GANAWAY


**********

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. 83,609-C
HONORABLE SCOTT WESTERCHIL, DISTRICT JUDGE

**********

## D. KENT SAVOIE
## JUDGE

**********

Court composed of John D. Saunders, Marc T. Amy, and D. Kent Savoie, Judges.


**REVERSED IN PART; AFFIRMED IN PART.**

**Elizabeth B. Carr**
**Bolen, Parker, Brenner, Lee & Engelsman, Ltd.**
**709 Versailles Blvd**
**P.O. Box 11590**
**Alexandria, LA 71315-1590**
**(318) 445-8236**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Danielle Ganaway (now Semento-Brooks)**

**Misty Dawn Smith**
**Attorney at Law**
**301 South Third Street**
**Leesville, LA 71446**
**(337) 238-2800**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Kyle Ganaway**

**SAVOIE, Judge.**

In this custody matter, Danielle Ganaway (now Semento-Brooks) appeals the trial court's ruling that (1) modified a co-domiciliary custody order to name Kyle Ganaway as the primary domiciliary parent of the parties' children, and (2) denied her motion seeking authorization to relocate her children to the Dallas-Fort Worth area. For the reasons that follow, we reverse the trial court's modification of custody and affirm the denial of Danielle's motion for relocation.

## FACTUAL AND PROCEDURAL BACKGROUND

Danielle Ganaway and Kyle Ganaway were married in 2005. They are the parents of two children who were born in 2005 and 2008, respectively. The parties separated in July 2010, and on August 13, 2010, Danielle filed a petition for divorce. The parties reside in Vernon Parish.

On September 23, 2010, the parties entered into a stipulation wherein they agreed that they would be the co-domiciliary parents of the children, with Kyle to have reasonable visitation every Friday through Sunday pursuant to a "Joint Implementation Custody Plan." A judgment was signed on November 22, 2010, in accordance with the parties' agreement.

On January 27, 2011, the parties entered into an "interim joint stipulation" agreeing that the children would live with Danielle's parents in Texas for the next six months. According to Danielle, the children returned to Vernon Parish in July 2011 and moved in with her as she had secured public housing.

A judgment of divorce was rendered November 26, 2012. The judgment also stated that Danielle was allowed to remove the minor children from Louisiana for the purpose of relocation to Keller, Texas, and that Kyle would have visitation any weekend provided that he gave Danielle three days' notice. However, according to Danielle, she decided not to move to Keller, Texas at that time, but

rather wanted to wait until the end of the school year; by that time, however, Kyle did not consent to the children moving.

On January 6, 2015, Danielle filed a Rule for Contempt alleging that Kyle had failed to return the children following a scheduled holiday visitation. She also sought a modification of custody. That same day, Kyle filed a motion seeking temporary *ex-parte* custody alleging that he had been notified by the sheriff's department that Danielle was required to be hospitalized due to a suicide attempt. The trial judge denied the interim relief sought by Kyle, but set the matter for hearing.

The matter was heard on February 5, 2015, at which time the parties stipulated to a joint, co-domiciliary, custody arrangement. The trial court signed a judgment on February 26, 2015, in accordance therewith. Danielle was awarded with physical custody of the children, with the exception of the second, third, and fourth weekends of the month, and Wednesday nights, when Kyle would have physical custody. A holiday visitation schedule was also established.

On December 5, 2015, Danielle filed a petition which sought to modify custody as well as a ruling of contempt and suspension of visitation. She alleged that Kyle had physically abused the children during a visitation. On December 14, 2015, the trial judge denied the interim emergency relief requested by Danielle, but signed an "interim order," stating that the visitation schedule for Kyle shall remain in effect until the matter was heard and that his visitation was to be supervised. The matter was heard January 21, 2016, at which time the parties entered into a stipulation. Judgment was rendered that day, but not signed until November 28, 2016. The judgment ordered that:

> the interim order of custody with supervised visitation in favor of
> Kyle Ganaway be continued until he completes both a parenting class
> and an anger management class and provides proof of completion of

2

the same to opposing counsel. Once Kyle Ganaway completes the aforementioned classes and provides proof of completion to opposing counsel, his visitation shall resume unsupervised, in accordance with the judgment signed February 26, 2015[.]

The judgment further required Kyle to become current on his child support obligation within fifteen days.

On May 26, 2016, Danielle filed a motion seeking to relocate the children's residence from Leesville, Louisiana to the "Dallas-Fort Worth Area." She alleged that she had remarried, that her current husband was in the Army Reserves and was stationed there, that the children's maternal grandparents resided there, that she wanted to complete her degree at the University of North Texas for increased job opportunities, and that there were improved educational options for her children. Danielle's motion was set for hearing July 11, 2016, and thereafter was continued several times. Meanwhile, on September 13, 2016, Judge Anthony Eaves recused himself from these proceedings, which were then reassigned to Judge Scott Westerchill.

Danielle's motion to relocate the children was heard before Judge Westerchill on November 28, 2016, and January 10, 2017. The trial court signed a judgment on February 21, 2017, that denied Danielle's motion to relocate. The judgment also modified the February 26, 2015 judgment to name Kyle as the primary domiciliary parent while maintaining the same physical custody schedule between the parties.

Danielle appeals and asserts the following as assignments of error:

1. The Trial Court erred when it changed domiciliary status when the issue was not plead by either party and neither requested or was granted permission to amend the pleadings or request a change in domiciliary status.

2. The Trial Court erred when it denied plaintiff's Motion for Authorization to relocate the residence of the children when that decision was based upon its ruling regarding domiciliary status, an

3

issue which was not properly before the Court and the Court ignored several relevant pieces of evidence favoring relocation.

## ANALYSIS

*Modification of Custody*

In *Evans v. Lungrin*, 97-541, 97-577, pp. 6-7. (La. 2/6/98), 708 So.2d 731, 735, the Louisiana Supreme Court stated:

> It is well-settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989). However, where one or more trial court legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and, if the record is otherwise complete, the appellate court should make its own independent *de novo* review of the record and determine a preponderance of the evidence. *Ferrell v. Fireman's Fund Ins. Co.*, 94-1252 (La. 2/20/95); 650 So.2d 742, 747, *rev'd in* part, on other grounds, 96-3028 (La. 7/1/97); 696 So.2d 569, *reh'g denied*, 96-3028 (La. 9/19/97); 698 So.2d 1388. A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial. *See Lasha v. Olin Corp.*, 625 So.2d 1002, 1006 (La.1993). Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights. *See Lasha*, 625 So.2d at 1006. When such a prejudicial error of law skews the trial court's finding of a material issue of fact and causes it to pretermit other issues, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the essential material facts *de novo*. *Lasha*, 625 So.2d at 1006.

On appeal, Danielle argues that the trial court's custody modification awarding Kyle with domiciliary status was an error of law since neither party sought a modification of custody and the issue was not otherwise properly before the trial court for consideration. We agree.

We addressed a similar issue in *Galland v. Galland,* 12-1075 (La.App. 3 Cir. 3/20/13), 117 So.3d 105. In *Galland*, following a hearing regarding where the parties' children were to attend school, the trial court rendered a judgment modifying the parties' co-domiciliary custody arrangement and named the father as the primary domiciliary parent. In reversing that portion of the judgment, we stated the following:

4

In *Domingue v. Bodin*, 08-62, p. 3 (La.App. 3 Cir. 11/5/08), 996 So.2d 654, 657 (alterations in original), we evaluated a similar issue and explained the powers of the trial court:

> Pursuant to La.Code Civ.P. art. 191 "[a] court possesses inherently all of the power necessary for the exercise of its jurisdiction even though not granted expressly by law." From that grant of power, trial courts are vested with authority, under La.Code Civ.P. art. 862 to grant relief to the party in whose favor the final judgment rendered was entitled, even if the party has not demanded such a relief in his pleadings and the latter contain no prayer for general and equitable relief. Accordingly, "under proper circumstances proof beyond the pleadings, even if objected to, may be admitted and considered when *permission to amend the pleadings is requested and granted*." La.C.C.P. Art. 1154. (emphasis supplied). *Ussery v. Ussery*, 583 So.2d 838, 841 (La.App. 2 Cir.1991) (*citing Guillory v. Buller*, 398 So.2d 43 (La.App. 3 Cir.1981)). However, notwithstanding this authority, "nothing in the article [art. 862] is intended to confer jurisdiction on a court to decide a controversy which the parties have not regularly brought before it." *Id*. Otherwise, "[a] judgment beyond the pleadings is a nullity." *Id*. at 841, *citing Romero v. State Farm Fire & Casualty Co*., 479 So.2d 694 (La.App. 3 Cir.1985).

Here, neither party requested nor was granted permission to amend the pleadings to request a change in domiciliary status. Indeed, the parties stipulated at the beginning of trial that the only issues before the court were the contempt issues and the issue of school choice. . . . Thus, the trial court went beyond the scope of the pleadings to unilaterally expand them to award [the father] primary domiciliary custody of the children, which is clearly "a controversy which the parties have not regularly brought before it." *Ussery*, 583 So.2d at 841.

Similarly, in the instant matter, the only issue pending before the court was Danielle's motion seeking the relocation of the children to the Dallas-Ft. Worth area. Neither party had pled or otherwise sought to modify the co-domiciliary custody arrangement provided in the February 26, 2015 stipulated judgment.

Kyle argues that *Galland*, 117 So.3d 105, is not applicable because in *Galland*, the court did not hear evidence concerning the best interest of the child, whereas in the instant case, the trial court allowed evidence concerning the best interest of the children in connection with the relocation motion. Therefore,

5

according to Kyle, the pleadings were expanded to allow for the trial court's *sua sponte* consideration and modification of custody. Kyle also notes that *Galland* pre-dated the supreme court's holding in *Hodges v. Hodges*, 15-585, p. 9 (La. 11/23/15), 181 So.3d 700, 706, indicating that "the court can only designate a single domiciliary parent."

We disagree with Kyle's suggestion that evidence concerning whether the proposed relocation was in the best interest of the children expanded the pleadings and placed modification of custody in front of the trial court. The analysis applicable to a relocation motion is not the same as the analysis applicable to a motion to modify custody. At issue in a relocation matter is whether the proposed relocation is made in good faith and is in the best interest of the child, taking into consideration the factors set forth in La.R.S. 9:355.14. *Gathen v. Gathen*, 10-2312 (La. 5/10/11), 66 So.3d 1. However, at issue in connection with a motion to modify a stipulated custody judgment, are (1) whether there has been a material change in circumstances since the custody decree was entered, and (2) whether the *proposed modification* is in the best interest of the child." *Cormier v. Cormier*, 12-1340, p. 5 (La.App. 3 Cir. 4/24/13), 112 So.3d 1073, 1076 (emphasis added).

In the instant matter, regardless of whether the February 26, 2015 co-domiciliary judgment is contrary to *Hodges,* 181 So.3d 700, neither party sought to modify the stipulated judgment, and the issue of modification of custody was not otherwise before the trial court with adequate notice to the parties.

Kyle also argues that modification of custody does not have to be pleaded, citing to *Mason v. Mason*, 16-287 (La.App. 3 Cir. 10/5/16), 203 So.3d. 519, and to *Miller v. Miller*, 14-1355 (La.App. 3 Cir. 2005) 893 So.2d. 233. However, these cases do not address a trial court's *sua sponte* change in domiciliary status when the issue of custody was not before the court. At issue in *Mason,* 203 So.3d 519 at

6

529, *citing Brantley v. Kaler,* 43,418 (La.App. 2 Cir. 6/4/08), 986 So.2d 188, was the trial court's *sua sponte* modification of the logistics of a *visitation* schedule; and at issue in *Miller,* 203 So.2d 233, was an original award of custody to grandparents who had not sought custody.

Therefore, we find that the trial court erred in modifying the February 26, 2015 stipulated custody judgment, and we reverse that portion of the trial court's judgment that awarded primary domiciliary status to Kyle.

*Danielle's Relocation Motion*

Louisiana Revised Statutes 9:355.10 states that "[t]he person proposing relocation has the burden of proof that the proposed relocation is made in good faith and is in the best interest of the child." "[B]y placing this two-part burden on the relocating parent and placing no burden on the nonrelocating parent, the legislature chose to assign a very heavy burden to the relocating parent to prove that relocation is in the best interest of the child." *Gathen,* 66 So.3d at 8. Louisiana Revised Statutes 9:355.14 sets forth the following with respect to a relocation motion:

> A. In reaching its decision regarding a proposed relocation, the court shall consider all relevant factors in determining whether relocation is in the best interest of the child, including the following:
>
> > (1) The nature, quality, extent of involvement, and duration of the relationship of the child with the person proposing relocation and with the non-relocating person, siblings, and other significant persons in the child's life.
> >
> > (2) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development.
> >
> > (3) The feasibility of preserving a good relationship between the non-relocating person and the child through suitable physical custody or visitation arrangements, considering the logistics and financial circumstances of the parties.

7

(4) The child's views about the proposed relocation, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct by either the person seeking or the person opposing the relocation, either to promote or thwart the relationship of the child and the other party.

(6) How the relocation of the child will affect the general quality of life for the child, including but not limited to financial or emotional benefit and educational opportunity.

(7) The reasons of each person for seeking or opposing the relocation.

(8) The current employment and economic circumstances of each person and how the proposed relocation may affect the circumstances of the child.

(9) The extent to which the objecting person has fulfilled his financial obligations to the person seeking relocation, including child support, spousal support, and community property, and alimentary obligations.

(10) The feasibility of a relocation by the objecting person.

(11) Any history of substance abuse, harassment, or violence by either the person seeking or the person opposing relocation, including a consideration of the severity of the conduct and the failure or success of any attempts at rehabilitation.

(12) Any other factors affecting the best interest of the child.

"This statute mandates that all of the factors set forth be considered by the court. It does not, however, direct the court to give preferential consideration to certain factors." *Curole v. Curole*, 02-1891, p. 6 (La. 10/15/02), 828 So.2d 1094, 1097. "A trial court's determination in a relocation matter is entitled to great weight and will not be overturned on appeal absent a clear showing of abuse of discretion." *Id.* at 1096.

The trial court provided the following extensive oral reasons for denying Danielle's relocation motion:

[T]hese parties have been in continuous litigation since 2015 up until the present date.

Since then, basically, [Kyle] has remarried approximately three years ago and he now has an eighteen-month-old daughter that was born of that marriage. [Danielle] has remarried back in the December of 2015. . . . She wants to move over where her parents now reside in Grapevine, Texas. And, basically her reasons for relocating were that the school system was better and she and her husband want to go to work and go to school and live with the kids in the State of Texas.

The facts also provide that Mrs. Brooks is employed here presently as a waitress . . . and she works basically six days a week. Her husband is unemployed and he's been unemployed for the last two years. He does do some Army Reserve work about one weekend a month over in Texas, and the children primarily stay at home with him while she's working. . . . [T]hey've been living in public housing in a three bedroom apartment since 2011, they have one vehicle, and the children are enrolled in school in Pickering. [Kyle] works at the Enterprise car rental place as some kind of a manager, and his wife is a nurse who works three nights over in Alexandria. . . . [T]he record reflects that [the children's] attendance [at school] is questionable and they're often tardy, and most of these absences and tardies take place while they're with their mother because as the mother testified, the daughter's hard to get up.

. . . . The [c]ourt has taken into consideration all of these twelve factors [set forth in La.R.S. 9:355.14] and I'm going to go through the twelve factors and give my reasons with respect to those factors.

First of all, as far as the nature, the quality, the extent of involvement, and the duration of the relationship with the child with the person proposing relocation and with the non-relocating parent, siblings, and other significant persons in the child's life, the [c]ourt finds that as far as all of these parties are concerned, these children have very close relationships with everyone. . . . The ages of these children are . . . eleven [and] . . . eight. And as far as the impact of this relocation on their physical well-being is concerned, there basically hasn't been any evidence about any physical well-being of the children or how that relocation will affect them as far as that goes, and likewise, as far as their emotional development is concerned.

As far as the educational impact is concerned, . . . the only evidence as far as that goes has been merely by testimony. There's not been any documentary evidence that's been introduced that shows that Texas schools are any better than our schools in Vernon Parish. . . .

The feasibility of preserving a good relationship between the non-relocating parent and the child through suitable physical custody or visitation arrangements, considering the logistics and financial circumstances of the parties: well, quite frankly, the financial circumstances of these parties, especially as far as the mother's

concerned, is very disturbing to this [c]ourt. Here I have a situation of a mother who's basically the bread winner of the family. She works six days a week at a restaurant and she has a husband at home who's been unemployed for the last two years. They live in public housing and they've been doing so since 2011. . . . [H]er husband has made no effort that I can find that he's done anything to try to obtain any type of employment here in Vernon Parish to improve their financial situation at all . . . basically, he's been sitting at home and their excuse is that he's been at home taking care of the kids. Well, quite frankly, I would be more impressed with a parent of these children staying home with the kids than I would a step-parent, and that's been the situation. . . . [A]s far as [Kyle] is concerned, he's employed . . . and his wife is working and going to school.

. . . .

The reason of [Danielle] to seek to relocation is basically that she wants to go to school and work in the State of Texas. And basically, all of that as far as the [c]ourt is concerned appears to be purely speculative. She said she can get a job, but she doesn't have any job lined up whatsoever; nothing. Her husband says he wants to be a State Trooper, but he hasn't been accepted into State Trooper School, and he also says that he wants to be a State Trooper and go to work. . . . [W]hat that does, is that puts these children in a situation of being raised by their grandparent, their grandmother basically, because the grandfather's gone all the time, while they both work and go to school and don't have any time to spend with their children in the State of Texas.

. . . .

Next, is the extent to which the objecting person has filled his financial obligations to the person seeking relocation, including the child support in this particular case. There's been some testimony that [Kyle] was behind on his child support. . . . But to your credit, you've caught up, and the testimony is that as of the present time, he's caught up and he's current.

The feasibility of the relocation of the objecting person. Well, we've talked about that quite a bit. Is it really feasible for [Kyle] to uproot he and his wife and move from a situation where both he and his wife's family live in Vernon Parish and go to Dallas, Texas? I find that it's not really feasible. Is it possible? Yes. Do they have Enterprise Rent-A-Car in Dallas, Texas? Sure they do. Do they have hospitals for his wife to go to work over there? Sure they do. But the realistic expectation for him to uproot and relocate not only he, his wife, and his new child and to leave their respective families and move to Dallas, Texas because momma wants to go there, is unreasonable.

There is no history of substance abuse or harassment that I've heard. But the most disturbing factor in this whole case has to do with this young man's testimony that I heard. . . . This child came in and testified, and it was evident that he had memorized a list of reasons why he wanted his – why his father and his paternal grandparents were bad people. He had been clearly influenced by his mother and his entire maternal side of his family. . . . He even told me about being given paper and pen in his grandparents' hotel room the day before our first hearing, and he and his sister made lists of the reasons they wanted to move to the State of Texas. That is inappropriate.

. . . .

You have been poisoning your children's minds against their father and their entire family. There is no way in the world I'm going to approve this relocation under those circumstances.

. . . .

Your children have been influenced and they are being harmed by this. They both love you. . . . [Y]our son is a very intelligent young man, and he – these children love both of you. And I know they love your parents too, but I'm not giving that child's – his reasons any consideration whatsoever. I was extremely disturbed when I finished speaking with him.

[Y]'all have lived here your whole lives. These children have lived here primarily their whole lives. I just don't see a real reason that it's in these children's best interest to move.

On appeal, Danielle argues that "though the [trial court's] oral ruling does discuss some of the factors for relocations found in La.[R.S.] 9:355.14, it is clear that the catalyst for the [trial] [c]ourt's decision was the determination that the parties could no longer be co-domiciliary parents." In particular, she notes that the trial court's ruling seemed to be based on testimony from one of the children that indicated to the trial court that Danielle was improperly influencing the children, which she denies occurred. She further argues that the benefits of the proposed relocation would "far outweigh the relatively minimal impact the move will have on the children's relationship with [Kyle]."

However, as reflected above, the trial court extensively discussed the factors provided by La.R.S. 9:355.14, and there is no indication that the trial court's

decision was based upon its conclusion to modify custody. Rather, the trial court seemed particularly concerned regarding Danielle's and/or her family's inappropriate attempt to influence the children concerning their opinion on moving to Texas; which was appropriate for the trial court to consider in connection with Danielle's relocation motion. After reviewing the record, we find that the trial court did not abuse its discretion in denying Danielle's motion for relocation.

## DECREE

For the reasons stated above, the portion of the trial court's ruling modifying the custody arrangement so as to name Kyle Ganaway as the primary domiciliary parent is hereby reversed. We further affirm the trial court's ruling denying Danielle Ganaway's (now Semento-Brooks') relocation motion. The costs of this appeal are assessed equally between the parties.

**REVERSED IN PART; AFFIRMED IN PART.**