STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

TYLER PAUL HARRINGTON

VERSUS

GABRIELLE BONVILLAIN HARRINGTON

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 108137-M
HONORABLE SUSAN LORNA THEALL, DISTRICT JUDGE

**********

SHANNON J. GREMILLION
JUDGE

**********

Court composed of Shannon J. Gremillion, Candyce G. Perret, and J. Larry Vidrine, Judges.

AFFIRMED.

R. Chadwick Edwards, Jr.
Edwards & Edwards
114 East Lafayette St
Abbeville, LA 70511
(337) 893-2884
COUNSEL FOR PLAINTIFF/APPELLANT:
    Tyler Paul Harrington
Dyan Schnaars
Schnaars Law Firm, LLC
1011 Camellia Boulevard, Suite 1
Lafayette, LA 70508
(337) 534-4326
COUNSEL FOR DEFENDANT/APPELLEE:
    Gabrielle Bonvillain Harrington

**GREMILLION, Judge**.

The father, Tyler Paul Harrington, appeals the trial court's judgment allowing the relocation of his minor child to Houma, Louisiana, with the mother, Gabrielle Bonvillain Harrington. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

Tyler and Gabrielle were married in November 2017; however, their son, Aiden, was born in November 2014. Tyler filed for divorce in April 2020. The parties had a custody arrangement whereby Aiden spent seven days with each parent on a rotating schedule. In July 2020, Gabrielle filed a formal notification pursuant to La.R.S. 9:355.5 that she intended to move to her hometown of Houma. The hearing officer recommended to the trial court that relocation was not in the child's best interest. Gabrielle objected. Gabrielle filed a petition for permission to relocate the minor child to Houma, Louisiana in February 2021. Following an April 2021 trial, the trial court named Gabrielle domiciliary parent and after analyzing all of the La.R.S. 9:355.14 relocation factors, allowed Gabrielle to relocate to Houma from Abbeville with the minor child.

Tyler now appeals the trial court's May 2021 judgment and assigns as error:

1. The factors for the determination of custody under Civil Code, article 134, and relocation under Revised States 9:355.1 *et seq.*, were improperly applied and trial court abused its discretion in authorizing relocation:

   a. Appellee testified that she did not have a job in Houma;
   b. Appellee was unable to show any financial benefit;
   c. Appellee's educational opportunities were better in Abbeville;
   d. the proposed home was unsuitable;
   e. the child's emotional and physical well being [sic] in Houma would be far inferior to his current life and potentially detrimental.

2. The trial court should have applied an adverse presumption to the Appellee's failure to call witnesses she identified and/or had been sworn and placed under the rule of sequestration.

# DISCUSSION

An appellate court will not overturn a trial court's determination regarding the relocation of one parent in the absence of an abuse of discretion. *Ganaway v. Ganaway*, 17-875 (La.App. 3 Cir. 2/28/18), 238 So.3d 540. Louisiana Revised Statutes 9:355.10 mandates that the parent who proposes relocation does so in good faith and in the best interest of their child. The best interest of the child is the paramount concern of all cases involving child custody in Louisiana. La.Civ.Code art. 134. Some factors that must be considered in determining the best interest of a child are:

> (1) The potential for the child to be abused, as defined by Children's Code Article 603, which shall be the primary consideration.
>
> (2) The love, affection, and other emotional ties between each party and the child.
>
> (3) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
>
> (4) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
>
> (5) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
>
> (6) The permanence, as a family unit, of the existing or proposed custodial home or homes.
>
> (7) The moral fitness of each party, insofar as it affects the welfare of the child.
>
> (8) The history of substance abuse, violence, or criminal activity of any party.
>
> (9) The mental and physical health of each party. Evidence that an abused parent suffers from the effects of past abuse by the other parent shall not be grounds for denying that parent custody.
>
> (10) The home, school, and community history of the child.

(11) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.

(12) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party, except when objectively substantial evidence of specific abusive, reckless, or illegal conduct has caused one party to have reasonable concerns for the child's safety or well-being while in the care of the other party.

(13) The distance between the respective residences of the parties.

(14) The responsibility for the care and rearing of the child previously exercised by each party.

La.Civ.Code art. 134.

The La.R.S. 9:355.14 factors considered by the trial court in contested relocation cases include:

(1) The nature, quality, extent of involvement, and duration of the relationship of the child with the person proposing relocation and with the non-relocating person, siblings, and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development.

(3) The feasibility of preserving a good relationship between the non-relocating person and the child through suitable physical custody or visitation arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's views about the proposed relocation, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct by either the person seeking or the person opposing the relocation, either to promote or thwart the relationship of the child and the other party.

(6) How the relocation of the child will affect the general quality of life for the child, including but not limited to financial or emotional benefit and educational opportunity.

(7) The reasons of each person for seeking or opposing the relocation.

(8) The current employment and economic circumstances of each person and how the proposed relocation may affect the circumstances of the child.

(9) The extent to which the objecting person has fulfilled his financial obligations to the person seeking relocation, including child support, spousal support, and community property, and alimentary obligations.

(10) The feasibility of a relocation by the objecting person.

(11) Any history of substance abuse, harassment, or violence by either the person seeking or the person opposing relocation, including a consideration of the severity of the conduct and the failure or success of any attempts at rehabilitation.

(12) Any other factors affecting the best interest of the child.

B. The court may not consider whether the person seeking relocation of the child may relocate without the child if relocation is denied or whether the person opposing relocation may also relocate if relocation is allowed.

The trial court presented written findings for the best interest factors in La.Civ.Code art. 134 and the relocation factors. It found numerous relocation factors favored neither parent but that factor one favored Tyler while factors three, six, seven, eight, and ten favored Gabrielle's relocation to Houma.

## TESTIMONY

Gabrielle testified that she met Tyler when they were students at Nichols State University in Houma. She said they dated, she became pregnant, and they moved in together with her mother, later marrying in 2017. Gabrielle testified that they lived in Houma until Aiden was three years old then moved to Abbeville where she stayed home with Aiden for a year-and-a-half. She then worked at a bank. She testified that all of Tyler's family lives in Abbeville while her family lives in Houma.

Gabrielle testified that the main reason for moving was financial. At the time of trial, she paid $500 per month in rent but would be able to live rent free in Houma with her grandmother and have use of her vehicle free of charge. She said she would get another job at a bank in Houma and also assist her father, an accountant, at his place of business. Gabrielle stated that she currently has a 2009 Chevrolet Tahoe

that required $1,633.60 in repairs in November 2020, but that it also needs a transmission and is unreliable.

Gabrielle testified regarding the current arrangement in Abbeville where Aiden attends school, and Tyler's sister, Kennedy Harrington, who lives at home with Tyler's parents, picks him up and takes care of him until Gabrielle or Tyler can pick him up after work. She agreed that Kennedy played a significant role in his life. She proposed that if she were allowed to relocate, Aiden would spend three weekends of the month, split holidays, and the whole summer except for a week or two before school starts with his father. Gabrielle reiterated that her main reason for moving was financial–to save money on rent and her vehicle and to make more money working for her dad at $15.00 per hour in addition to a job at the bank. She also said she would return to school which she could not do if she stayed in Abbeville because she could not afford it.

Kurt Bonvillain, Gabrielle's father, testified that he would be able to give Gabrielle twenty hours of work per week. He said she would be able to live rent-free with his mother, whose house is paid for. She would also be able to drive his mother's car, a 2016 Nissan Rogue that is paid for, as his mother can no longer drive due to her deteriorating eyesight.

Tyler testified that he makes $50-55,000 annually working as the manager of a gym. He lives in a house he inherited from his great-grandparents that is located next door to his grandmother's house. He works Monday and Wednesday from 10:00 a.m. to 7:00 p.m.; Tuesday and Thursday from 10:00 a.m. to 6:00 p.m.; and Friday from 10:00 a.m. to 5:00 p.m. He works one Saturday a month from 7:00-10:00 am. He pays $120.00 per month in child support. He testified about Aiden's close relationship with Kennedy who watches him every day after school while he

works. Tyler admitted to using steroids but stated that he quit using them when he knew the relocation matter would come before the court.

Joan Harrington, Tyler's grandmother, testified to the close relationship her family has with Aiden. Kennedy testified she picks Aiden up from school every day and is very close to him.

## DISCUSSION

The trial court found that Gabrielle met her burden of proving that she would have better financial opportunities in the Houma area because she would no longer have to pay rent, would have use of a reliable late-model vehicle, and would be able to work for her father while attending school. In its written reasons, the trial court stated in part:

> Factor 1: GABRIELLE has a close relationship with her child and has been the primary caretaker.
>
> . . . .
>
> TYLER clearly loves his son; however, he is not able to spend much time with him during the week.

Nevertheless, the trial court found factor one favored Tyler because of the close ties Aiden has with his aunt, grandparents, and great-grandmother. It found factor three favored Gabrielle because Tyler would have Aiden three weekends per month, half of the holidays, and all of the summer. It further found that Tyler and Gabrielle voluntarily exchanged custody in Thibodeaux for a while because Tyler spent every weekend there with his former girlfriend.

The trial court found factor six, relating to financial benefits and educational opportunities related to the relocation, favored Gabrielle, stating:

> GABRIELLE testified that her rent in Vermillion Parish is currently $500 per month. She testified that she would be able to live rent free with her Grandmother Ellen in Houma, could probably obtain a job at Bank One, but would also be able to work for her father, who is an accountant and CFO. Gabrielle's father testified that he knows

someone at Bank One who suggested they could get her a job; he also testified that he would pay GABRIELLE $15/hour to do extra work for him. GABRIELLE and her father testified that she is interested in going to cosmetology/esthetician school, and that can work for her father while she does this.

GABRIELLE testified that her grandmother's home is two-bedroom, but that the second bedroom where she and Aiden would stay is a large loft that has its own bathroom and setup for a kitchen if she decided to add one. She also testified that the backyard is a decent size and that it is on a bayou but is separated by a fence. TYLER testified that the home is on a very busy street and that there is a wood dock and a fence which has a gate to the bayou. He testified under cross examination that a lock could easily be put on the gate at the fence.

GABRIELLE currently drives a 2009 Chevrolet Tahoe SUV, which is a community vehicle. The car note is $418 per month, and GABRIELLE testified that they are upside down on the note. GABRIELLE testified that she just made some expensive repairs on the vehicle, and needed additional repairs, but that she cannot afford to maintain and repair the vehicle; she also testified that TYLER advised her he could not assist her with repairs of this community vehicle. If GABRIELLE is allowed to relocate, she testified she would be able to drive her grandmother's vehicle, which is a 2016 Nissan Rogue (which has no note), and would only have to pay for insurance and fuel. GABRIELLE testified that she cannot make it financially in Abbeville and that she and Aiden will have a better quality of life in Houma since she can live with her grandmother rent free and won't have to pay an expensive car not and won't have to pay for constant repairs. She testified that she will have her family's support and she will be able to go back to school. She testified that there are private schools in Houma that Aiden could attend and because he would be starting first grade, he can adjust.

TYLER testified that the relocation would take quality time away from he and Aiden, and that it would negatively affect Aiden and their relationship, stating that "a young boy needs his father". However, the Court notes the limited time during the week that TYLER is able to spend with Aiden because of his work hours.

This factor favors GABRIELLE'S relocation.

Factor seven was found to be in favor of Gabrielle. Although Tyler stated it would be financially beneficial for Gabrielle to go to school in Abbeville, the trial court found that "a Pell Grant would not make up for the employment, housing, and transportation issues that GABRIELLE would face should she remain in Abbeville."

The trial court also found that factor eight favored Gabrielle's relocation, noting that the "proposed relocation would affect the circumstances of the minor child because he would not be living in poverty while living with his mother." It further noted that Tyler could continue to pay $462.50 for private school tuition in Houma instead of in Abbeville at the school where his many family members are employed.

Factor ten was also found favorable to Gabrielle because "Tyler could easily relocate but chooses not to." Regarding factor twelve, relating to the overall best interest of the child, the trial court stated:

> The distance between TYLER's home and GABRIELLE's grandmother Ellen's home is 100 miles (1 hour 45 minutes). The distance triggers the relocation statute. TYLER's family is very close to Aiden and very involved, however, it is apparent that they are doing the lion's share of the caregiving during TYLER's custodial time. TYLER's family, particularly Kennedy and Joan, can help with the transportation on the Fridays of the weekends that TYLER has Aiden. This will allow for them to make up the time that they will lose during the week with Aiden. The Court also considered the situation regarding Sheila's [Tyler's mother] testimony that when Aiden lived in Houma previously, she would pick up Aiden at least once per month to bring him to Abbeville.

We find no abuse of the trial court's vast discretion in deciding Gabrielle's relocation will be in the best interest of Aiden. Tyler's first three errors relating to the trial court's finding that Gabrielle would benefit financially are supported by the facts. While she did not currently have a job in Houma, which is not surprising since she could not commit to one until she was allowed to move by the court, both she and her father testified she could easily get work at a bank. She would also be able to work for her father for additional income. Moreover, the biggest financial benefit would be the decrease in her expenses. Gabrielle receives next to nothing in child support and simply cannot meet her current living expenses in Abbeville. Tyler claims Gabrielle's grandmother's home is unsuitable while Tyler lives in his great-

grandparents' home that he inherited.  Moreover, the fact that Gabrielle's grandmother's home borders a bayou is of little import.  If it were, children all over Louisiana would need to be uprooted from their homes.  The house has a fence and Aiden is not a toddler.

Finally, Tyler's biggest complaint is the potential damage Aiden will suffer because he will not be with Tyler's family members all the time.  While we are aware that a child often forms close bonds with the family closest in vicinity to their residence, these relationships do not trump a parent's right to raise their child.  There was no indication that Gabrielle had any intention of not continuing to foster the relationships Aiden had with Tyler's family.  All of the parties were very amicable and communicated in a way to benefit Aiden.  There was no indication that Tyler or Gabrielle did not have Aiden's best interest at heart.

While Tyler heavily relies on Aiden's relationship with his paternal relatives and his school friends, seven-year-olds are quite capable of making new friends and learning to adjust to change.

Tyler spends a significant amount of time characterizing Kennedy as the child's primary caregiver.  This is because both parents are at work when Aiden gets out of school.  A parent should not be penalized because a family member has volunteered to provide after-school care.  To do so would encourage parents to place their children in daycare centers to avoid the claims made by Tyler here.  Moreover, the time that Tyler actually spends with Aiden Monday thru Friday is very limited due to the times he gets off of work, the travel time to his home, and Aiden's bedtime of 9:00 p.m.  It is clear from the record that it is Tyler's family who spends the majority of the time caring for Aiden during Tyler's custodial period.  We cannot set a precedent in which one parent will be penalized down the road for fostering a relationship between her child and her former spouse's family.

The best interests of a child require that a parent not be held hostage to a place where they cannot improve their standing in life because they allowed a close bond to be formed between the family of the former spouse. Tyler will have Aiden more than enough time to continue the well-established relationship Aiden has with Tyler's family.

Tyler makes statements in brief such as, "The conclusion that Ms. Harrington is Aiden's primary care giver has no basis in fact." Gabrielle was a stay-at-home mom for eighteen months and had a part-time retail job at a boutique. She solely cared for Aiden when he was quarantined for fourteen days after contracting COVID-19 on the second day of school. Tyler himself testified that Gabrielle is a great mother. At trial, he made no inapposite claims of who cares for Aiden during Gabrielle's week of custody. The claims made in brief are contrary to the trial testimony which did not put Gabrielle's parenting skills or status as a dedicated a mother into question. The trial court did not err in finding that Gabrielle was Aiden's primary caregiver, and her family support system is in Houma.

Finally, in his second assignment of error, Tyler argues that a negative presumption should be applied because Gabrielle did not call witnesses to testify. Gabrielle testified that her family, friends, and support network are in Houma, which is where she is from and where Aiden resided for the first three years of his life. Witness testimony would have added little, if nothing, to these uncontested facts and would have only been a waste of the court's time. Again, at no time was Gabrielle's parenting skills called into question, and there was no doubt that Aiden had formed strong bonds with Tyler's family. However, there were some factors that called Tyler's parenting skills into question including his admitted long term steroid use and his dismissal from a position at a Catholic high school because he texted a female student.

We find that the trial court did not abuse its discretion in finding that Gabrielle should be allowed to relocate and that it would be in Aiden's best interest in the long-term if his mother were able to achieve financial independence through a combination of expense reduction and improving her job opportunities through education. The trial court did not abuse its discretion in finding Gabrielle's relocation to Houma will benefit her and, therefore, be in the best interest of Aiden.

## CONCLUSION

The judgment of the trial court allowing Gabrielle to relocate to Houma, Louisiana, is affirmed. All costs of this appeal are assessed to the plaintiff-appellant, Tyler Paul Harrington.

**AFFIRMED**.