PETTIGREW, J.
|2This appeal challenges numerous aspects of a trial court’s judgment, including the finding that plaintiff was in contempt of court for failing to pay private school tuition for the minor child, the ruling concerning plaintiffs motion to annul and/or amend a previous consent judgment, and the dismissal of plaintiffs petition for change in custody. For the reasons that follow, we affirm.
FACTS AND PROCEDURAL HISTORY
The record reflects that plaintiff, Leonard J. Carollo, III, and defendant, Trish E. Carollo, were divorced by a Texas judgment dated December 22, 2005, which judgment was made executory in Louisiana by order dated August 22, 2007. One child, Leonard J. Carollo, IV, was born of the marriage. All ancillary matters, including child support, custody, and visitation were addressed in the original Texas divorce judgment. Thereafter, in September 2007, Leonard filed a motion to modify the terms of the 2005 divorce agreement, in particular, visitation and his child support obligation. Numerous continuances were filed by Leonard, and ultimately a rule date before the hearing officer was scheduled for June 29, 2009, with a hearing before the trial court scheduled for July 21, 2009. Prior to the hearing officer conference, Trish filed a rule requesting an increase in child support, which was also set for hearing before the trial court on July 21, 2009.
Following the hearing officer conference on June 29, 2009, the parties entered into a “Joint Stipulation And Consent Judgment” whereby the parties retained joint custody of the child, with Trish named as the domiciliary parent. Moreover, Leonard’s child support obligation was reduced, and a procedure was put in place for the parents to pay their share of the child’s expenses. This judgment was signed by the trial court on July 10, 2009.
In November 2010, Trish filed a rule for contempt against Leonard arguing that he was in violation of the July 10, 2009 judgment because he had an “overnight guest of a romantic nature while exercising overnight visitation with the minor child.” Leonard responded to the rule for contempt with various exceptions, including | svagueness/ambiguity, no cause of action, and res judicata. Leonard also filed his own rule for contempt against Trish, arguing that she had not been sharing information with him about the child as she was ordered to do in the July 10, 2009 judgment. Leonard also moved for a change in custody, increased visitation, decrease in child support, and an amendment to the consent judgment. Thereafter, Trish filed a supplemental rule for contempt and a rule to increase child support. These matters were considered at a hearing officer conference on April 27, 2011, at which time the hearing officer recommended that cus *56 tody remain the same with the exception that Leonard was to have an additional week of visitation during the summer. With regard to child support, the hearing officer denied both Leonard’s request for a decrease and Trish’s request for an increase for failure to show a change in circumstances. The hearing officer found both Leonard and Trish in contempt of court and ordered them both to pay attorney fees in connection with the finding of contempt. The recommendations of the hearing officer were made temporary orders of the trial court by order dated May 17, 2011, pending a hearing before the trial court on July 14, 2011.
After a continuance by Leonard’s counsel, the matter was heard on October 18, 2011. Judgment was rendered in open court on October 18, 2011, as follows: The parties were awarded joint custody with Trish remaining as the domiciliary parent. The trial court took judicial notice of Leonard’s admission that he knowingly violated the prior consent judgment dated July 10, 2009, by having an overnight guest of a romantic nature while the child was present. The trial court deferred adjudication on the contempt issue, but ordered Leonard to pay Trish’s court costs associated with filing the rule for contempt. The trial court again reiterated the overnight guest prohibition from the July 10, 2009 consent judgment, but included an exclusion for Leonard’s girlfriend, Eriana Antoun. The trial court ordered that the child continue to be enrolled in private school and that all expenses attributable to his education be split between the parties equally, commencing with the 2011/2012 school year. A parenting coordinator, Dr. Stephen W. Thompson, was appointed by the trial court to make recommendations regarding the child. Trish’s rule for contempt and rule to increase child support were dismissed, with prejudice. |4Leonard was awarded one extra week of visitation in the summer, and his rules for contempt, to modify custody, and to decrease child support were dismissed, with prejudice. It was further ordered that all other provisions of the July 10, 2009 consent judgment not expressly modified would remain in full force and effect. Written judgment to this effect was not signed by the trial court until April 23, 2012.
On March 30, 2012, Leonard filed another petition for change in custody and/or increased visitation. In said petition, Leonard also sought removal of Trish as domiciliary parent and requested that the child be enrolled in a school that could accommodate his special needs as a gifted student. Attached to Leonard’s petition was a letter from the parenting coordinator Dr. Thompson to counsel for both parties, in which Dr. Thompson outlined his suggestion with regard to the child’s education. On May 24, 2012, Trish again filed a rule for contempt against Leonard, this time arguing that Leonard had willfully violated the April 23, 2012 consent judgment by refusing to pay his share of the child’s school tuition for the 2011/2012 school year. On May 30, 2012, Leonard filed a motion to annul and/or amend and/or vacate the April 23, 2012 consent judgment and a motion for sanctions. These matters proceeded to a hearing officer conference on June 6, 2012, at which time the hearing officer made the following recommendations:
The father’s motion for modification of legal custody is denied.
[[Image here]]
The father’s physical custody is modified as follows:
On the father’s custodial week-ends, the child shall be returned Monday morning to school[.]
*57 All other physical custody as provided in Consent Judgments of 7/10/2009 and 4/23/2012 remain in effect.
[[Image here]]
Leonard ... is hereby found to be in contempt of the prior order of this Court for failure to pay private school tuition timely.
He is hereby sentenced to serve 3 days in the parish jail, and fined $300.00 payable to the Judicial Expense Fund.
The fíne and sentence are suspended, on the following condition(s):
|sThe father paying his 50% share of the private school tuition by 7/31/2012. The father not being found in contempt of court in any further proceedings.
Leonard filed an objection to the hearing officer’s recommendations, and, therefore, the recommendations were never made the final judgment of the trial court. Rather, they became a temporary order of the trial court (with the exception of the recommendations on contempt, which remained recommendations only) pending the hearing before the trial court.
The matter proceeded to hearing before the trial court on July 31, 2012, at which time the court heard testimony from both Leonard and. Trish and considered documentary evidence. With regard to Leonard’s motion to annul and/or amend and/or vacate the April 23, 2012 consent judgment and motion for sanctions, the trial court denied the motion to annul the consent judgment in whole, but granted the request to amend the judgment in part as it related to Leonard’s summer visitation. The trial court amended the judgment to remove all language from the summer visitation clause, except to state that Leonard was afforded an extra week of visitation in the summer. In all other respects, the motion was denied, and the April 23, 2012 consent judgment remained in effect as written.
The next matter taken up was Leonard’s rule on custody, visitation, change in domiciliary status, and choice of school for the child. At the conclusion of Leonard’s testimony on these issues, counsel for Trish moved for an involuntary dismissal on the grounds that Leonard did not carry his burden of proof. The trial court granted the request for involuntary dismissal, finding that Leonard had not met his burden of proving that there was a material change in circumstances materially affecting the welfare of the child since the last judgment was entered into the record on October 18, 2011.
Finally, the trial court considered the contempt issue. Trish testified regarding Leonard’s refusal to pay the child’s tuition for the 2011/2012 school year. According to the record, by April 12, 2012, Leonard was aware of what his share of the tuition was and | Bthat it was due to the school on May 1. Leonard sent Trish an email on April 30, 2012, advising as follows with regard to the tuition payment: “In light of Dr. Thompson’s written recommendation that Lenny be re-enrolled in a gifted program ... end due to the pending court dates in June and July regarding Dr. Thompson’s recommendation, I will not pay Lenny’s tuition until the court makes a ruling concerning Lenny’s education.”
When Trish was tendered for cross examination, counsel for Leonard urged exceptions raising the objections of prematurity and no cause of action. The following colloquy occurred:
[Counsel for Leonard:]
Your Honor, I would like to move for exception of prematurity in this action. To give you a little procedural history, the rule for contempt was filed on May 24th, 2012. However, the payment wasn’t due until May 1st of 2012. In the *58 2009 judgment, it gives [Leonard] two months time to pay any fees that have been incurred by [Trish] including — any fees, any monetary fees that would be involved. Also, we had a Hearing Officer Conference. And the hearing officer gave [Leonard] until July 31st to pay this, of which I have a check here today for her,
[Counsel for Trish:]
A, that’s a recommendation of the hearing officer. B, an exception of prematurity is a declinatory or dilatory — I am not sure — exception which must be raised prior to filing an answer. While an answer wasn’t due, we are now at the end of a trial. It’s too late to object to prematurity.
[Counsel for Leonard:]
Exception of no cause of action, Your Honor.
[Counsel for Trish:]
It’s been — they’ve got to file that before we start the trial, Your Honor.
[Counsel for Leonard:]
I can do that on the day of trial.
[Counsel for Trish:]
But we’ve started.
THE COURT:
But why would you do that? Why would you do that and waste my time on this ... ?
17[CounseI for Leonard:]
Well, Your Honor, I didn’t have a choice.
[[Image here]]
THE COURT:
Well, the Court is going to deny the oral motion for the exceptions. There’s several reasons. The main one would be it’s moot. You know, she’s just testified your client sent her an e-mail or a text saying he wasn’t going to pay it. She had to file the contempt. He didn’t say I have two months to pay it, correct?
[Counsel for Leonard:]
No, Your Honor. That’s not what the e-mail says. It actually says—
THE COURT:
What did the e-mail say?
[Counsel for Leonard:]
It actually says, “I will not pay Lenny’s tuition until the Court makes a ruling.” He isn’t denying that he owes tuition.
THE COURT:
That’s not what the judgment says. [Counsel for Leonard:]
Your Honor, he only — he has — the 2009 judgment does say that.
THE COURT:
Until the Court makes a ruling he doesn’t have to pay?
[Counsel for Leonard:]
The Court — it’s July 31st [sic]. Payment wasn’t due until June 31st. If the receipt wasn’t given until April, and the hearing officer — in the Hearing Officer Conference it was brought up. It said that he said he would pay it.
THE COURT:
That’s a recommendation only....
[Counsel for Leonard:]
I understand that, Your Honor. But I am telling you that we already had this pending before the Court. He would not have owed this tuition had he not— had LJ, Little Lenny, not gone to school next year.
|STHE COURT:
That’s not the law_ He pays according to a court order until the Court changes it. Then, if he is entitled to credit or reimbursement, we give it to him. But you are not correct on the law....
[[Image here]]
*59 [Y]ou have had months to file an exception. You have not. Today you wait until the end of this hearing and you bring forth this exception of prematurity. You didn’t file it in the record. You don’t have a written exception today. It’s moot because your client has already — written evidence has been offered that he wasn’t going to pay until the Court ruled. That’s not the law. And he would be in contempt of court if that’s what he is telling this lady after he agreed in a judgment to pay it, in the consent judgment of October. He doesn’t get to file something, keep a child from being able to go to school or a child to be supported while he’s waiting on a court to see if I am going to go along with what he wants to change in the last judgment. He doesn’t get to do that.... And if you can show me any law or any case that says that, I will look at it. But I’ve been doing this quite some time, and I think I’m safe on this one.
So the bottom line is the exception is denied. The exception, were it to be filed, would be moot. It is clear that he told her he wasn’t going to pay it until the Court said whether or not he got to decide did the child go to another school.
So the exception is denied. It was untimely filed. And even had I had it to consider, it would have been moot.
Following the trial court’s ruling on the exception, testimony on the contempt issue continued. Thereafter, the trial court found Leonard in contempt of the October 18, 2011 consent judgment, noting as follows:
Today it has been successfully proven to the Court that he is in contempt of the court’s orders of October 18th, 2011, which was a Consent Judgment that is very clear. In the judgment he is ordered to pay — I want to cite exactly the
paragraph — Page 2, the middle of the page, “It is further ordered, adjudged, and decreed that the minor child shall continue to be enrolled in private school.” It is not limited to any school term.
This was a long day. We had many conversations with counsel and with the parties. The transcript is extensive of the stipulation being placed on the record. It is absolutely clear this was not limited to any school year.
It says, “The tuition and registration fees attributable to the minor child’s enrollment in private school shall be split between the parties, with each party being responsible for 50 percent of the same, commencing” — “commencing”— “with the 2011/2012 school year.” We wouldn’t have said “commencing” if it only meant that school year, in the Court’s opinion.
The judgment is clear. [Trish] has proven, by the appropriate burden of proof, that [Leonard] is in contempt of those orders of this |9court. The Court finds this was done intentionally, knowingly and purposefully, without justifiable excuse. This constitutes willful disobedience of a judgment of this court. He continues to show a lack of respect for the court’s orders. He’s jeopardized this child’s enrollment in the school in which he agreed the child was to be enrolled. It has required the mother to spend her funds to pay the entire amount and wait until today when he finally gives her a check today in the amount of $2,847.50.
In addition to that amount, he is to pay the sum of $1400 attorney’s fees and court costs to Mr. Jim Moorman and his client within seven days hereof. I don’t know what the court costs are. You can find that out from the Clerk’s Office.
[[Image here]]
*60 The Court is going to sentence [Leonard] to serve — this being the second rule for contempt that’s before the Court — is going to sentence him ... to serve a sentence of 30 days in the St. Tammany Parish jail. The sentence is suspended upon him paying the $1400 plus court costs within seven days hereof.
[[Image here]]
In addition, he will be on probation for a period of one year. This will be unsupervised probation through the 22nd Judicial District Court. As a term of his probation, the sentence will be suspended but subject to being served if he does not continue to pay his obligations as court ordered for child support — that includes the tuition — timely.
The former requirement, if there is one from a judgment in 2009 that, in your interpretation, Ms. Fratello [counsel for Leonard], would allow him to wait two months after the tuition is due to pay [Trish], that is going to be amended. The tuition is to be paid immediately as she sends it to him, within seven days thereof, and certainly before it is due to the school as incurred.
In addition, if he was allowed 90 days before, that is going to be reduced, on any other expenses, to 30 days.... Those are to be paid within 30 days. No longer are we having 90 days to pay anything. I am not expecting this mother to have to put out all of this money and wait 90 days to get reimbursed by your client.
A judgment in accordance with these findings was signed by the trial court on August 27, 2012. It is from this judgment that Leonard has appealed, assigning the following specifications of error:
1. The trial court erred in failing to allow the parenting coordinator to testify at trial and by failing to allow the parenting coordinator’s correspondence to be admitted at trial pursuant to La. C.C.P. art. 1636.
2. The trial court erred in granting Defendant/Appellee’s motion for involuntary dismissal of all of Plaintiff/Appellant’s claims without hearing all evidence.
| m3. The trial court abused its discretion in amending the April 23, 2012 consent judgment as it pertains to dismissal with prejudice and amending the July 10, 2009 consent judgment on its own motion with respect to decreasing the timeline for reimbursement of expenses.
4. The trial court erred/abused its discretion in denying PlaintiffAppellant’s request for increased visitation pursuant to La.R.S. 9:335(A)(2)(b), when there was no evidence that increase in visitation was not warranted and the April 23, 2012 consent judgment reserved the right for PlaintiffAppellant to reassert modification of custody/change in visitation as a result in his change, of residence from Texas to Louisiana.
5. The trial court erred/abused its discretion in holding PlaintiffAppellant in contempt of court for failing to timely pay tuition for private school.
LAW AND ANALYSIS

Parenting Coordinator

In his first assignment of error, Leonard argues that in making its ruling, the trial court should have considered the correspondence submitted by the parenting coordinator. Leonard maintains that the “correspondence, arguably a report, was submitted and was merely presented for the court’s referenced.” He further notes that the parenting coordinator’s input was crucial and relevant to the matter at trial.
*61 It is well settled that the trial court is not required to allow the parenting coordinator to be called as a witness. Moreover, the parenting coordinator shall not be called as a witness without prior approval of the trial court. La. R.S. O^SA.[1] As correctly pointed out by Trish in brief, Leonard has not alleged that he requested or received prior approval of the trial court to call Dr. Thompson as a witness or that this approval was erroneously denied. In fact, this very issue was discussed by the trial court below during the hearing:
Dr. Thompson is the parenting coordinator. No one filed to have the parenting coordinator testify. Even if they had filed to have him testify, it is in my discretion. Most times we don’t allow the parenting coordinators to testify because the law discourages that. We want them to continue to be objective and be your parenting coordinator. So I am not going to fallow into evidence by your testimony what Dr. Thompson has said to either one of you.
Based on our review of the record and applicable Jaw, we find no error in the trial court’s ruling on this issue.

Involuntary Dismissal

In assignment of error number two, Leonard challenges the trial court’s ruling on Trish’s motion for involuntary dismissal of Leonard’s rule on custody, visitation, change in domiciliary status, and choice of school for the child. He argues that premature dismissal of all of his claims prior to testimony by Trish resulted in the trial court’s inability to consider all factors that were in the best interest of the child.
Louisiana Code of Civil Procedure article 1672(B) provides for a motion for involuntary dismissal of a plaintiffs action in the course of a bench trial:
In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.
Unlike a motion for directed verdict in a jury trial, Article 1672(B) requires the trial court to evaluate all the evidence and render a decision based upon a preponderance of the evidence without any special inferences in favor of the opponent to the motion. Proof by a preponderance of the evidence simply means that taking the evidence as a whole, such proof shows that the fact or cause sought to be proved is more probable than not. Connelly v. Connelly, 94-0527, p. 14 (La.App. 1 Cir. 10/7/94), 644 So.2d 789, 798.
An involuntary dismissal should not be reversed by an appellate court in the absence of manifest error. Cosman v. Cabrera, 2009-0265, p. 9 (La.App. 1 Cir. 10/23/09), 28 So.3d 1075, 1081. Accordingly, in order to reverse the trial court’s grant of involuntary dismissal, we must find, after reviewing the record, that there is no factual basis for its finding or that the finding is clearly wrong or manifestly *62 erroneous. Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880, 882 (La.1993). The issue is not whether the trial court was right or wrong, but whether its conclusion was reasonable. Id.
When a custody decree is, as herein, a stipulated or consensual judgment, a party seeking modification of custody must prove that there has been 3 material change in circumstances (also referred to as a change in circumstances materially affecting the welfare of the child) since the original decree, as well as prove that the proposed modification is in the best interest of the child. Cedotal v. Cedotal, 2005-1524, pp. 5-6 (La.App. 1 Cir. 11/4/05), 927 So.2d 433, 436. If the first prong of the test is not met and a material change in circumstances is not shown, the inquiry ends, and there is no basis for altering the physical custody decree. Lunney v. Lunney, 2011-1891, p. 4 (La.App. 1 Cir. 2/10/12), 91 So.3d 350, 353, writ denied, 2012-0610 (La.4/4/12), 85 So.3d 130.
After Leonard presented his evidence on the rule on custody, visitation, change in domiciliary status, and choice of school for the child, Trish moved for an involuntary dismissal arguing that Leonard had failed to carry his burden of proving a prima facie case “that her decision to place the child in private school adversely affected the child ... that a modification in physical custody since last October is adversely affecting the child or that she’s abused her position as domiciliary parent.”
The trial court, after hearing argument from respective counsel, ruled as follows on Trish’s motion:
[T]he first issue ... for the Court to consider, there was a motion or rule for the Court to consider whether or not the decision of the primary domiciliary parent should be overturned in deciding that the child remain enrolled in the private school that the parties agreed to back in October of last year.
[Leonard] would have had to have met his burden of proof. By law he has not done so. The Court is going to grant the request for involuntary dismissal of his rule to overturn the decision of the domiciliary parent as far as the choice of school for the child.
On the second matter that was heard today, there is a request by [Leonard] to, for the Court to change custody of the child and the arrangement to a shared custody arrangement or an arrangement in which there would be no domiciliary parent or that the mother would be ... removed from at least the primary decision and role of primary domiciliary-parent’s authority on certain issues.
| lsThe burden of proof is that [Leonard] would have to have proven that, since October of last year when the last stipulated judgment was entered in this matter, October — it came to court October 18th, 2011 — in which they reached certain agreements that, after that, because there was at that time various rules between the parties including rules to modify custody, they were all settled. Everything was done, They were done with prejudice at that point in time, and they are reurging many of the same issues that were before the Court back in October when everyone agreed to settle this matter.
[[Image here]]
But it’s the decision of the Court that [Leonard] has not met his burden of proving that there is a material change in circumstances materially affecting the welfare of this child since the last judgment was entered in this record of October 18th, 2011, and, therefore, the Court is going to grant the motion to dismiss, *63 involuntarily dismiss on Irish’s behalf. ...
Mindful that it was Leonard’s burden to prove a material change in circumstances since the original decree and that the proposed modifications were in the best interest of the child, we find no manifest error in the trial court’s grant of Irish’s motion for involuntary dismissal of Leonard’s rule on custody, visitation, change in domiciliary status, and choice of school for the child.

Alleged Amendments of Consent Judgments

Leonard next argues that the trial court erred in amending the April 23, 2012 consent judgment as it pertains to dismissal with prejudice and amending the July 10, 2009 consent judgment on its own motion with respect to decreasing the time-line for reimbursement of expenses. We find no merit to these arguments on appeal.
With regard to the alleged amendment of the April 23, 2012 consent judgment, we find no such language in the August 27, 2012 judgment that is before us for review. Rather, the trial court simply noted during the July 31, 2012 hearing that when the matter came before it on October 18, 2011, the parties had reached certain agreements and all matters were settled “with prejudice at that point in time.” In fact, the April 23, 2012 consent judgment that appears in the record before us contains the following pertinent language:
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Mother’s Rule for Contempt and to Increase Child Support is hereby dismissed, with prejudice.
|14IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Father’s Rules for Contempt, to Modify Custody, and to Decrease Child Supportive, hereby dismissed, with prejudice.
Thus, no amendment by the trial court was necessary as the pertinent dismissals in the April 23, 2012 judgment were already with prejudice.
With regard to the trial court’s amendment of the July 10, 2009 consent judgment with respect to the timeline for reimbursement of expenses, we find no error in this as Leonard was held in contempt for his failure to pay the child’s private school tuition. The trial court found that it was done “intentionally, knowingly and purposefully, without justifiable case” and wanted to insure that Trish would be timely reimbursed for all expenses related to the child’s tuition and extracurricular activities in the future. Based on the facts and circumstances herein, we find this action by the trial court to be reasonable and without error.

Denial of Increased Visitation

In assignment of error number four, Leonard asserts the trial court erred in denying his request for increased visitation pursuant to La. R.S. 9:335(A)(2)(b).[2] Leonard maintains that he wants to be an *64 integral part of his son’s life and that he has the financial means, the capability, love, and affection to spend as much time as possible with his son. Citing Harang v. Ponder, 2009-2182 (La.App. 1 cir. 3/26/10), 36 So.3d 954, writ denied, 2010-0926 (La.5/19/10), 36 So.3d 219, as support for his position, Leonard argues that he should be awarded increased visitation with the child and that a new implementation plan should be instituted. Leonard further contends 115that he should be successful in his bid for increased visitation because Trish did not present any evidence to contradict his evidence. We find no merit to Leonard’s arguments in this regard.
As previously indicated, Leonard, as the parent seeking modification of a consensual custody decree, bore the burden of establishing the occurrence of a change in circumstances materially affecting the welfare of his child and that his proposed modification of the existing custody arrangement would be in the best interest of his child. Cedotal, 2005-1524 at 5-6, 927 So.2d at 436. Leonard failed in his burden, thus Trish was not required to submit evidence to rebut insufficient evidence. See Soignet v. Soignet, 546 So.2d 541, 544 (La.App. 1 Cir.1989). Therefore, we find no error in the trial court’s denial of his request for increased visitation.

Contempt

In his final assignment of error, Leonard argues the trial court abused its discretion in holding him in contempt for failing to timely pay the child’s private school tuition. Leonard asserts that he believed he only had to pay for private school tuition for the 2011-2012 school year, as there was no court order in place ordering payment of private school tuition for the 2012-2013 school year. Based on the applicable law and the record before us, we find no support for Leonard’s argument.
A constructive civil contempt of court includes the “[w]illful disobedience of any lawful judgment, order, mandate, writ, or process of the court.” La.Code Civ. P. art. 224(2). A finding that a person willfully disobeyed a court order in violation of Article 224(2) must be based on a finding that the person violated an order of the court intentionally, knowingly, and purposefully, without justifiable excuse. Boyd v. Boyd, 2010-1369, p. 15 (La.App. 1 Cir. 2/11/11), 57 So.3d 1169, 1178-1179.
As discussed by the trial court below, the language in the April 23, 2012 consent judgment is very clear with respect to the private school tuition. It states as follows:
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the minor child shall continue to be enrolled in private school. The tuition and registration fees attributable to the minor child’s enrollment in private school shall be split between the parties, with each party being | ^responsible for fifty percent (50%) of the same, commencing with the 2011/2012 school year.
In finding Leonard guilty of contempt, the trial court pointed out the use of the word “commencing,” noting that in the court’s opinion, “we wouldn’t have said ‘commencing1 if it only meant that school year.” The trial court continued, finding that Trish had shown Leonard’s intentional, knowing, and purposeful contempt of the court’s order that he pay the child’s private school tuition. The trial court concluded that Leonard’s actions constituted “willful disobedience of a judgment of this court” and that he continued “to show a lack of respect for the court’s orders.”
As this was the second rule for contempt that was before the court, Leonard was sentenced to serve 30 days in St. Tammany Parish Jail, which was suspended upon *65 his payment of $1,400.00 in attorney fees and court costs. He was also placed on unsupervised probation for one year. Based on a thorough review of the record and the facts and circumstances before us in this case, we are unable to find any abuse of discretion in the trial court’s finding of contempt or the resulting sentence imposed on Leonard.
DECREE
For the above and foregoing reasons, we affirm the trial court’s August 27, 2012 judgment. We assess all costs associated with this appeal against plaintiff, Leonard J. Carollo, III.
AFFIRMED.

. Louisiana Revised Statutes 9:358.5 provides as follows:
A. The parenting coordinator shall not be called as a witness in the child custody proceeding without prior court approval.
B. The parenting coordinator shall distribute all reports to the court, the parties, and their attorneys.

. Louisiana Revised Statutes 9:335 provides, in pertinent part, as follows:
A. (1) In a proceeding in which joint custody is decreed, the court shall render a joint custody implementation order except for good cause shown.
(2)(a) The implementation order shall allocate the time periods during which each parent shall have physical custody of the child so that the child is assured of frequent and continuing contact with both parents.
(b) To the extent it is feasible and in the best interest of the child, physical custody of the children should be shared equally.
(3) The implementation order shall allocate the legal authority and responsibility of the parents.