JAMES F. MCKAY III, CHIEF JUDGE
*319 In this child custody case, the father, Rye G. Cooper ("Mr. Cooper"), appeals the February 27, 2018 judgment allowing the mother, Elizabeth L. Chamberlain ("Ms. Chamberlain"), to relocate with their minor son to Nashville, Tennessee. Mr. Cooper also appeals the April 20, 2018 judgment, which was rendered in connection with the granting of his motion for new trial. We affirm both judgments.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
The parties were married on January 3, 2012. Their son was born on April 29, 2012. On June 9, 2017, Mr. Cooper filed a petition for divorce. A consent judgment for interim custody was issued on November 2, 2017, wherein the parties agreed to exercise shared, joint legal custody of the minor child. On November 13, 2017, Ms. Chamberlain filed a motion for relocation of the minor child to Nashville, Tennessee, where she was offered a post-doctoral fellowship at Vanderbilt University. Ms. Chamberlain has a Ph.D. in Earth and Environmental Science, specializing in luminescence dating.
Mr. Cooper objected to the relocation, and the matter was tried on January 8, 29 and 30, 2018. A judgment and separate reasons for judgment was rendered on February 27, 2018, granting Ms. Chamberlain's motion for relocation. The judgment further awarded joint custody, with Ms. Chamberlain designated as the domiciliary parent. A summer visitation schedule was also established, with Mr. Cooper receiving a block of time with his son. Finally, the judgment ordered Mr. Cooper to submit to random drug and alcohol screenings.
Following a hearing on Mr. Cooper's motion for new trial, the trial court rendered a judgment on April 20, 2018, amending the February 27, 2018 judgment to provide for a more specific plan of implementation/visitation schedule, and to address other ancillary matters in connection with the relocation of the minor child. All other aspects of the February 27, 2018 judgment remained in effect.
Mr. Cooper's appeal from the February 27, 2018 judgment and the April 20, 2018 judgment followed. He asserts the following assignments of error:
1. The trial court erred in denying Mr. Cooper's motion to apply the uncalled witness rule when Ms. Chamberlain failed to call her mother, whom she listed as a witness;
2. The trial court erred in denying Mr. Cooper's motion for involuntary dismissal at the conclusion of Ms. Chamberlain's case;
3. The trial court erred in granting Ms. Chamberlain's motion to relocate the minor child;
4. Alternatively, the trial court erred in failing to provide an adequate plan of implementation of joint custody;
5. The trial court erred in designating Ms. Chamberlain the domiciliary parent, when that issue was not before the court; and
6. Alternatively, the trial court erred in failing to apply the custody factors set forth in La. C.C. art. 134.
DISCUSSION
Standard of Review
"A trial court's determination in a relocation matter is entitled to great weight and will not be overturned on appeal absent a clear showing of abuse of *320 discretion." Curole v. Curole , 2002-1891, p. 4 (La. 10/15/02), 828 So.2d 1094, 1096. "In conducting our review to determine whether the district court abused its discretion, we must accept each factual finding the district court made in arriving at its conclusion, unless a particular factual finding is manifestly erroneous." State ex rel. Dept. of Social Services v. Whittington , 2015-0118-119, p. 3 (La. App. 4 Cir. 5/18/16), 193 So.3d 1234, 1237 (citing LaGraize v. Filson, 2014-1353, p. 15 (La. App. 4 Cir. 6/3/15), 171 So.3d 1047, 1054 ).
Assignment of Error No. 1 : Failure to Apply the Uncalled Witness Rule
At the conclusion of Ms. Chamberlain's case, Mr. Cooper motioned the court to apply the adverse presumption against Ms. Chamberlain because she did not call her mother to testify despite listing her as a witness. The trial court denied the motion.
Ms. Chamberlain testified that her mother would be moving to Nashville with her to assist in caring for the minor child. Ms. Chamberlain's mother did not testify. Mr. Cooper questions whether Ms. Chamberlain's mother will relocate to Nashville, because she lives in Wisconsin on a farm that she owns with her husband.
In Taylor v. Entergy Corp. , 2001-0805, pp. 14-15 (La. App. 4 Cir. 4/17/02), 816 So.2d 933, 941, this Court explained the uncalled witness rule as follows:
The "uncalled witness" rule has been defined as an adverse presumption that arises when "a party has the power to produce witnesses whose testimony would elucidate the transaction or occurrence" and fails to call such witnesses. 19 Frank L. Maraist, Louisiana Civil Law Treatise: Evidence and Proof , § 4.3 (1999). A party's failure to call such witnesses gives rise to the presumption that "the witnesses' testimony would be unfavorable to him." Id. Although the advent of modern, liberal discovery rules has been recognized to limit this rule, it "remains viable." Id. Indeed, this court has recognized this rule applies when, as in this case, witnesses with peculiar knowledge of material facts pertinent to the case are not called. Stewart v. Great Atlantic and Pacific Tea Co. , 657 So.2d 1327, 1330 (La. App. 4 Cir. 1995) ; Gurley v. Schwegmann Supermarkets, Inc. , 617 So.2d 41, 44 (La. App. 4 Cir.1993). We have also noted that "[t]he court may consider this presumption as it would any other relevant evidence in the case." Id.
The Louisiana Supreme Court has stated that "[a]n adverse presumption exists when a party having control of a favorable witness fails to call him or her to testify, even though the presumption is rebuttable and is tempered by the fact that a party need only put on enough evidence to prove the case." Driscoll v. Stucker, 2004-589, p. 18 (La. 1/19/05), 893 So.2d 32, 47 (citation omitted).
As this Court further explained in Moretco, Inc. v. Plaquemines Par. Council , 2012-0430, p. 18 (La. App. 4 Cir. 3/6/13), 112 So.3d 287, 296-97 (citations omitted),
Whether to apply such an inference is fully within the discretion of the trial court. Roth v. New Hotel Monteleone, LLC, 2007-0549, p. 6 (La. App. 4 Cir. 1/30/08), 978 So.2d 1008, 1012. Louisiana jurisprudence has held that the trial court's failure to apply the negative inference is not an abuse of discretion under any one of these circumstances: where the witness's testimony would be cumulative; where the party seeking to avail itself of the negative inference has the burden of proof on the issue that would be addressed by the witness's testimony;
*321 and where the witness is equally available to the opposing party. As all of these circumstances are present here, and any one would have been sufficient to justify the trial court's refusal to apply the presumption, we cannot say that the court's failure to do so was an abuse of discretion.
Upon review of the record in the present case, we find no abuse of discretion in the trial court's failure to apply the uncalled witness rule. The trial court made a credibility determination based on Ms. Chamberlain's testimony that her mother would accompany her to Nashville. Furthermore, the record reflects that Ms. Chamberlain's mother was present in New Orleans during part of the trial, and Mr. Cooper could have issued a subpoena to ensure her testimony. In sum, we find that the facts presented here do not warrant the application of the uncalled witness rule.
Assignment of Error No. 2: Denial of the Motion for Involuntary Dismissal
Mr. Cooper argues that the trial court erred in denying his motion for involuntary dismissal. Mr. Cooper made the motion at the close of Ms. Chamberlain's case, asserting that she failed to prove by a preponderance of the evidence that relocation was in the child's best interest. We find no merit in this assignment of error.
In Crescent City Cabinets & Flooring, L.L.C. v. Grace Tama Develop. Co., L.L.C., 2016-0359, pp. 8-9 (La. App. 4 Cir. 10/19/16), 203 So.3d 408, 413-14, this Court explained the well-established principles of involuntary dismissal as follows:
Following a bench trial, a defendant may move for involuntary dismissal, pursuant to La. C.C.P. art. 1672(B), when the plaintiff has shown no right to relief based upon the facts and law. Cao v. Liberty Mut. Ins. Co., 12-954, pp. 4-5 (La. App. 5 Cir. 5/30/13), 119 So.3d 725, 728 (citing Brock v. Singleton , 10-550, p. 16 La. App. 5 Cir. 3/29/11), 65 So.3d 649, 660 ). The trial court must "evaluate all the evidence and render a decision based upon a preponderance of the evidence without any special inferences in favor of the opponent to the motion." Carollo v. Carollo , 13-0010, p. 11 (La. App. 1 Cir. 5/31/13), 118 So.3d 53, 61. "Proof by a preponderance of the evidence simply means that taking the evidence as a whole, such proof shows that the fact or cause sought to be proved is more probable than not." Id. (citing Connelly v. Connelly , 94-0527, p. 14 (La. App. 1 Cir. 10/7/94), 644 So.2d 789, 798 ).
The trial court is vested with much discretion in deciding a motion for involuntary dismissal. Ragas v. Hingle , 13-1577, pp. 4-5 (La. App. 4 Cir. 7/9/14), 146 So.3d 687, 690 (citing Guidry v. City of Rayne Police Dep't , 09-664, p. 2 (La. App. 3 Cir. 12/9/09), 26 So.3d 900, 902 ). A trial court's ruling on a motion for involuntary dismissal shall not be reversed unless there is no factual basis for its finding or that finding is manifestly erroneous or clearly wrong. Cao , 12-954, p. 5, 119 So.3d at 728 ; Carollo , 13-0010 at p. 11, 118 So.3d at 61. "The issue is not whether the trial court was right or wrong, but whether its conclusion was reasonable." Carollo , 13-0010 at p. 12, 118 So.3d at 62 (citing Stobart v. State through Dep't of Transp. & Dev. , 617 So.2d 880, 881 (La. 1993).
As we will discuss more fully below, the trial court considered the twelve factors required in a relocation case, and found the majority of those factors to be in favor of Ms. Chamberlain and relocation. Moreover, it is undisputed that Ms. Chamberlain's request for relocation was made in good faith. Clearly, the record establishes a factual basis for the trial court's ruling in denying the motion for involuntary dismissal.
*322 Assignment of Error No. 3 : Granting the Motion to Relocate
Mr. Cooper argues that it is not in the child's best interest to relocate given the short-term nature of the relocation and the fact that the child has stability and consistency in New Orleans in his school, friends and extended family network. Mr. Cooper further argues that Ms. Chamberlain failed to present any evidence as to how the child's life would be enhanced by the move.
"The person proposing relocation has the burden of proof that the proposed relocation is made in good faith[1] and is in the best interest of the child." La. R.S. 9:355.10. La. R.S. 9:355.14(A) provides twelve factors that courts are to consider in ruling on whether a contested relocation is in the best interest of a child, as follows:
(1) The nature, quality, extent of involvement, and duration of the relationship of the child with the person proposing relocation and with the non-relocating person, siblings, and other significant persons in the child's life.
(2) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development.
(3) The feasibility of preserving a good relationship between the non-relocating person and the child through suitable physical custody or visitation arrangements, considering the logistics and financial circumstances of the parties.
(4) The child's views about the proposed relocation, taking into consideration the age and maturity of the child.
(5) Whether there is an established pattern of conduct by either the person seeking or the person opposing the relocation, either to promote or thwart the relationship of the child and the other party.
(6) How the relocation of the child will affect the general quality of life for the child, including but not limited to financial or emotional benefit and educational opportunity.
(7) The reasons of each person for seeking or opposing the relocation.
(8) The current employment and economic circumstances of each person and how the proposed relocation may affect the circumstances of the child.
(9) The extent to which the objecting person has fulfilled his financial obligations to the person seeking relocation, including child support, spousal support, and community property, and alimentary obligations.
(10) The feasibility of a relocation by the objecting person.
(11) Any history of substance abuse, harassment, or violence by either the person seeking or the person opposing relocation, including a consideration of the severity of the conduct and the failure or success of any attempts at rehabilitation.
(12) Any other factors affecting the best interest of the child.
Over the course of three days, the trial court heard testimony from Ms. Chamberlain, Mr. Cooper, Mr. Cooper's mother, Bliss Higgins, and his stepsister, Danica Gerrity. As explained in the reasons for judgment, the trial court analyzed each of the above twelve factors, finding in favor of relocation. We will address each factor as follows:
*323 (1) The nature, quality, extent of involvement, and duration of the relationship of the child with the person proposing relocation and with the non-relocating person, siblings, and other significant persons in the child's life.
The trial court found this factor to be neutral. More specifically, the trial court noted that both parents were active in the child's life and that Mr. Cooper and Ms. Chamberlain received help from both of their families. These findings were supported by the record. It is evident from the testimony that the minor child has more regular contact with his extended family members (grandparents, aunts, uncles and cousins) on Mr. Cooper's side, as they reside in Louisiana. However, while Ms. Chamberlain does not have family residing here, the child has had frequent and ongoing contact with his maternal grandparents. The record also reflects that Ms. Chamberlain and the child (not Mr. Cooper) traveled and vacationed quite often together with Ms. Chamberlain's parents.
(2) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development.
This factor was determined to be in favor of Ms. Chamberlain. The trial court considered the parties' testimony in finding that the proposed school in Nashville (a ten minute walk from Vanderbilt University) had a similarly excellent reputation to the child's current school (Luscher Charter School). Furthermore, the trial court noted that Ms. Chamberlain has a significant history of being involved in the child's education, while Mr. Cooper neglected to attend school activities and brought the child late to school on several occasions. Ms. Chamberlain testified that her position at Vanderbilt and the close proximity of the child's school will allow her continued involvement in the child's education and school activities.
The record reflects that Mr. Cooper was unable to attend many school functions at school due to his work schedule. He testified, however, that he could have altered his work schedule on occasion but chose not to attend some school functions if he knew Ms. Chamberlain would be attending. He thought that was best given their toxic relationship.
(3) The feasibility of preserving a good relationship between the non-relocating person and the child through suitable physical custody or visitation arrangements, considering the logistics and financial circumstances of the parties.
The trial court determined that this factor favored Ms. Chamberlain, finding that she appeared committed to facilitating Mr. Cooper's visitation with the child.
As she testified, Ms. Chamberlain proposed that Mr. Cooper have eight weeks of visitation during the summer, along with school holidays and one weekend each month. She further stated that she would transport the child from Nashville to New Orleans for the visits. Additionally, Ms. Chamberlain was open to allowing Mr. Cooper to communicate with the child via Skype.
(4) The child's views about the proposed relocation, taking into consideration the age and maturity of the child.
This factor was determined to be inapplicable given the child's age.
*324 (5) Whether there is an established pattern of conduct by either the person seeking or the person opposing the relocation, either to promote or thwart the relationship of the child and the other party.
This factor was determined to be neutral. The trial court concluded that both parents had a shared desire for the child to have a relationship with the other parent. We agree. Ms. Chamberlain and Mr. Cooper encouraged the child's relationship with the other parent.
(6) How the relocation of the child will affect the general quality of life for the child, including but not limited to financial or emotional benefit and educational opportunity.
The trial court found this factor to be in favor of Ms. Chamberlain. Here, the court determined that the relocation and post-doctoral fellowship allowed Ms. Chamberlain to advance her career. The court reasoned that the advancement would benefit the minor child financially.
Ms. Chamberlain testified that Vanderbilt offers reasonably priced comprehensive health insurance for herself and the child that she could not afford while working at Tulane University. She also testified that her field of study in geology has had a very positive influence on the child. Ms. Chamberlain introduced photographs showing how the child has been introduced to many different nature related activities, particularly while traveling with his mother.
(7) The reasons of each person for seeking or opposing the relocation.
This factor was also found to favor Ms. Chamberlain, given the prestigious opportunity offered in her unique field. Mr. Cooper believed that the relocation was only in Ms. Chamberlain's best interest, not the child's best interest. He stated that he saw no need for Ms. Chamberlain to obtain further schooling when she already had several degrees. The record before us demonstrates that Ms. Chamberlain's reasons for relocation were well-founded. Moreover, while Mr. Cooper does not agree with the relocation, he does not argue that the proposed relocation was necessarily made in bad faith.
(8) The current employment and economic circumstances of each person and how the proposed relocation may affect the circumstances of the child.
The trial court found this factor to be in favor of Ms. Chamberlain. Mr. Cooper testified that he earns $55,000.00 annually, with the potential for performance bonuses, as a general manager for a custom clothing warehouse. Ms. Chamberlain was earning less than $30,000.00 per year at Tulane University. The position at Vanderbilt University pays more than $50,000.00 annually, and offers affordable health insurance. The trial court determined that the increase in Ms. Chamberlain's income will inherently benefit the minor child. Both parties testified that they received financial assistance from their respective families and that they were not always able to afford health insurance for the child.
(9) The extent to which the objecting person has fulfilled his financial obligations to the person seeking relocation, including child support, spousal support, and community property, and alimentary obligations.
This factor was determined to be inapplicable. The parties do not currently have *325 any obligations pertaining to child support, spousal support or community property.
(10) The feasibility of a relocation by the objecting person.
The trial court determined that this factor favored Ms. Chamberlain, finding that is was not impossible for Mr. Cooper to find a job in Nashville given his wider array of possible employment opportunities in the clothing and restaurant industries. Ms. Chamberlain testified that Mr. Cooper considered moving to Nashville. Mr. Cooper denied this assertion, stating that he had no desire to leave Louisiana and his family.
(11) Any history of substance abuse, harassment, or violence by either the person seeking or the person opposing relocation, including a consideration of the severity of the conduct and the failure or success of any attempts at rehabilitation.
The trial court found this factor to "significantly" weigh in favor of Ms. Chamberlain. The record demonstrates that Mr. Cooper overdosed on heroine in 2012, just a few months after the minor child was born. Alcohol and cocaine were also found in his system at the time. As a result, he attended an outpatient rehabilitation center for six months. The record also demonstrates that Mr. Cooper was involved in two traffic stops, one in December 2014, and one in January 2016. In each instance, Mr. Cooper refused to use the breathalyzer and was arrested for DUI. The second arrest occurred while Ms. Chamberlain was traveling out of the country for two months and the minor child was in Mr. Cooper's care (with the help of his family). Mr. Cooper was ordered to attend Alcoholics Anonymous meetings. In spite of attending the meetings, Mr. Cooper stated that he did not abstain from drinking alcohol one hundred percent of the time. Mr. Cooper's driver's license was reinstated less than one month before this trial.
(12) Any other factors affecting the best interest of the child.
Of concern to the court was Mr. Cooper's 10:00 a.m. to 7 p.m. work schedule. The court also expressed concern over Mr. Cooper's actions in coming home late or staying out all night along with his numerous ATM withdrawals at bars. Text messages and credit card/ATM receipts introduced into evidence confirmed Mr. Cooper's late night activities. Mr. Cooper testified that he only went out late after work or stayed at a friend's house overnight because of the toxic relationship with Ms. Chamberlain. He acknowledged that he does have drinks with friends after work.
Our review of the record supports the trial court's determination that the relocation will have positive benefits for the child. We recognize that it is not ideal for the minor child to leave his home and his close family members to move to a new city. However, given the totality of the circumstances, we find no abuse of discretion on the part of the trial court in finding that the proposed relocation was made in good faith and is in the child's best interest.
Assignment of Error No. 4 : In the Alternative, Failure to Provide an Adequate Plan of Implementation of Joint Custody.
Mr. Cooper makes four separate arguments within this assignment of error, which we discuss separately below.
i. The judgment should have set a termination date for the relocation.
Mr. Cooper maintains that the February 27, 2018 judgment granted Ms. Chamberlain's motion to relocate, yet the reasons for judgment state that she was *326 granted the right to relocate for a period of one year. Mr. Cooper argued in his motion for new trial that the judgment and reasons for judgment should be consolidated. The April 20, 2018 judgment on the motion for new trial denied that request. We find no error in that ruling.
The trial court properly rendered a judgment and separate reasons of judgment in accordance with La. C.C.P. art. 1918.[2] Furthermore, it is well-established that appellate courts review judgments and not reasons for judgments. Wooley v. Lucksinger , 2009-0571, 2009-0584, 2009-0585, 2009-0586, pp. 77-78 (La. 4/1/11), 61 So.3d 507, 572.
Regarding the merits of Mr. Cooper's argument, we find no error in the trial court's failure to set an end date for the relocation in the judgment. Unlike the case cited by Mr. Cooper, LaGraize v. Filson , 2014-1353, (La. App. 4 Cir. 6/3/15), 171 So.3d 1047[3] , the fellowship offered to Ms. Chamberlain was open ended. Ms. Chamberlain testified that she was granted the one-year fellowship with a verbal offer to extend her program pending funding. Thus, the trial court did not err in leaving the relocation open. Furthermore, the April 20, 2018 judgment provides that "the Court retains the exclusive and ongoing jurisdiction of the custodial arrangement of the minor child." Thus, either party can seek modification of the custody arrangement in this jurisdiction if a change in circumstances so warrants.
ii. The implementation plan does not provide Mr. Cooper frequent and continuing contact with the child.
Mr. Cooper argued in his motion for new trial that his summer visitation is insufficient, because out of the ten summer weeks, Ms. Chamberlain has four weeks and he has six. The trial court denied his request for additional summer visitation. However, the trial court awarded Mr. Cooper visitation in alternating years for Easter, Thanksgiving, Christmas, and New Year's. It further awarded him custody with the minor child in Nashville on any three-day weekend upon providing a 48-hour notice. Finally, Mr. Cooper was allowed to contact the minor child once per day before the child's bedtime via telephone, FaceTime or Skype.
La. R.S. 9:355(2)(a) provides that "[T]he implementation order shall allocate the time periods during which each parent shall have physical custody of the child so that the child is assured of frequent and continuing contact with both parents." As this Court has recognized, "[T]he primary goal of joint custody is upheld so long as the non-domiciliary parent is assured of frequent and continuing contact with the child." Moreau v. Moreau , 2015-0564, p. 10 (La. App. 4 Cir. 11/18/15), 179 So.3d 819, 826 (citations omitted). "Substantial time, rather than strict equality of time, is mandated by the legislative scheme providing for joint custody of children." Id. Thus, an award of joint custody does not necessarily require equal sharing of physical custody. Id.
"Child custody determinations made by the trial court are entitled to great weight and, upon appellate review, that determination will not be disturbed absent a clear showing of abuse of discretion."
*327 Hilkirk v. Johnson , 2015-0577, p. 25 (La. App. 4 Cir. 12/23/15), 183 So.3d 731, 746 (internal citations omitted). The goal of every child custody case is to determine what is in the best interest of the child, with each case viewed based on its own particular facts and circumstances. Id. (citing Mulkey v. Mulkey , 2012-2709, p. 15 (La. 5/7/13), 118 So.3d 357 ).
Considering the particular circumstances of this case, we find that the implementation order, as amended by the trial court in the April 20, 2018 judgment, provides Mr. Cooper with frequent and continuing contact with the child. Accordingly, we find no merit in this argument.
iii. Implementation order is impermissibly vague.
Mr. Cooper argues that the April 20, 2018 judgment provides for holiday visitation, but fails to set forth specific dates or duration of the holiday custody schedule and fails to specify the travel arrangements and costs of travel. It is further argued that Ms. Chamberlain should be required to make these trips with the child to ensure that the child has a continuing relationship with Mr. Cooper.
The implementation order in the present case sets forth the summer vacation and the holiday visitation schedules. The judgment further provides that the parties shall communicate with each other concerning the pick-up and drop-off for the major holidays. Based on the forgoing, we cannot conclude that the trial court abused its discretion in failing to include the specific details sought by Mr. Cooper. Moreover, the law is clear that Mr. Cooper can seek modification of the custody order if necessary.
iv. The trial court erred in ordering Mr. Cooper to submit to random drug and alcohol screening.
Mr. Cooper avers that he should not be made to submit to drug and alcohol screenings even during the school year when the child may not again be in his custody for months. Considering the record evidence of Mr. Cooper's past issues with drugs and his two prior DUI arrests, we find no abuse of discretion on the part of the trial court in rendering this order. As in all custody cases, the best interest of the child is paramount.
Assignment of Error No. 5 : Designation of Ms. Chamberlain as the Domiciliary Parent.
Mr. Cooper asserts that the trial court improperly issued a sua sponte judgment modifying the previous stipulated judgment[4] to name Ms. Chamberlain as the domiciliary parent, when no such request was before the court. Ms. Chamberlain's motion to relocate did not include a motion to modify custody.
In support of this argument, Mr. Cooper cites Ganaway v. Ganaway , 2017-0875 (La. App. 3 Cir. 2/28/18), 238 So.3d 540. However, Ganaway is clearly inapposite to the present case, and does not support Mr. Cooper's argument. The Ganaways exercised a joint-domiciliary custody arrangement. Ms. Ganaway filed a motion to relocate with the minor child to Texas. The trial court denied Ms. Ganaway's motion for relocation and granted a sua sponte judgment naming Mr. Ganaway as the domiciliary parent. Ganaway does not involve a situation, as in the case sub judice , where domiciliary status was modified *328 based on the child's relocation. There was no relocation in Ganaway .
La. R.S. 9:355.17 provides:
Providing notice of a proposed relocation does not constitute a change of circumstance warranting a change of custody. Relocating without prior notice if there is a court order awarding custody or relocating in violation of a court order may constitute a change of circumstances warranting a modification of custody.
Any change in the principal residence of a child, including one not meeting the threshold distance set out in R.S. 9:355.2, may constitute a change of circumstances warranting a modification of custody . (emphasis added).
The 2012 comments to La. R.S. 9:355.17 state that "courts have discretion to modify the current custodial arrangement after any move that makes an existing custody order unfeasible."
Clearly, the child's relocation to Nashville makes the previous shared custody arrangement unfeasible, requiring a modification of custody. Moreover, in Hodges v. Hodges , 2015-0585, p. 4 (La. 11/23/15), 181 So.3d 700, 703, the Supreme Court explained that once the trial court arrives at a decision to award joint custody, La. R.S. 9:335 governs the court's determination of the details of the custody arrangement. La. R.S. 9:335 provides in pertinent part:
B. (1) In a decree of joint custody the court shall designate a domiciliary parent except when there is an implementation order to the contrary or for other good cause shown.
(2) The domiciliary parent is the parent with whom the child shall primarily reside, but the other parent shall have physical custody during time periods that assure that the child has frequent and continuing contact with both parents.
Under the circumstances presented here, we find no abuse of discretion on the part of the trial court in naming Ms. Chamberlain the domiciliary parent.
Assignment of Error No. 6 : Failure to Apply the Custody Factors Set Forth in La. C.C. art. 134.
Mr. Cooper argues that the trial court erred in failing to analyze this case under both La. R.S. 9:355.14 (relocation factors) and La. C.C. art. 134 (best interest of the child factors)[5] . He maintains that the *329 article 134 factors weigh heavily in his favor. We find no merit in this assignment of error.
"Louisiana's relocation statutes, which are based on the American Academy of Matrimonial Lawyers Model Relocation Act, also retain the 'best interest of the child' standard as the fundamental principle governing decisions made pursuant to its provisions." Curole, 2002-1891, p. 4, 828 So.2d at 1096. This list of factors "parallels the listing of multiple factors found in La. C.C. art. 134, with special emphasis on the logistical and economic circumstances associated with a relocation, particularly an out-of-state relocation." Bonnecarrere v. Bonnecarrere , 2011-0061, p. 9 (La. App. 1 Cir. 7/1/11), 69 So.3d 1225, 1233 (citing Gray v. Gray , 45,826, p. 8 (La. App. 2 Cir. 11/17/10), 55 So.3d 826, 834 (on rehearing) ).
The record before us demonstrates that while only the twelve relocation factors set forth in La. R.S. 9:355.14 were specifically addressed in the reasons for judgment, the trial court overwhelmingly considered that child's best interest in ruling in favor of relocation. Thus, we cannot conclude that the trial court failed to consider the relevant factors of La. C.C. art. 134. Moreover, in determining the best interest of a child, it is well established that the list of factors provided in La. C.C. art. 134"have been construed to be nonexclusive, and the trial court has the discretion to determine the relative amount of weight to be given each factor. The court is not required to analyze mechanically all of the dozen factors; rather the court should balance and weigh the factors in view of the evidence presented." Hanks v. Hanks , 2013-1442, p. 9 (La. App. 4 Cir. 4/16/14), 140 So.3d 208, 215 (citation omitted).
CONCLUSION
After a thorough review of the record, and placing great weight on the trial court's findings of fact, we conclude that the trial court properly permitted the relocation. Additionally, for the reasons stated above, we find no error in the designation of Ms. Chamberlain as the domiciliary parent. Finally, we find no error in the trial court's implementation plan, as it provides Mr. Cooper with frequent and continuing contact with the child. Accordingly, we affirm the February 27, 2018 and April 20, 2018 judgments.
AFFIRMED
BELSOME, J., CONCURS WITH REASONS
BELSOME, J., CONCURS WITH REASONS.
I respectfully concur in the majority's opinion to affirm the trial court's judgment authorizing the relocation of the parties' minor child to Nashville, Tennessee with his mother, Ms. Elizabeth Chamberlain. However, while I hesitantly agree with the result reached in this case, I find that some of the relocation factors weighed heavily in favor of the father.
As correctly stated by the majority, there are twelve relocation factors to be considered. Eight of the factors were weighed in favor of Ms. Chamberlain; four were found to be either inapplicable or neutral; and none were found to be in favor of Mr. Cooper. Such an analysis belies the evidence in the record.
The undisputed evidence reflects the child had a strong paternal family support *330 system in Louisiana, including his father, grandparents, aunts, cousins and extended family.[1] In addition, he also had an established network of school friends. Accordingly, at a minimum, the first two relocation factors concerning significant persons in the child's life and the impact on physical and emotional development weigh in favor of Mr. Cooper.
Nevertheless, given the analysis of the other factors, I agree with the majority's finding that the trial court did not abuse its discretion in authorizing the relocation. For these reasons, I concur in the majority's opinion to affirm the trial court's judgment.

Mr. Cooper concedes that Ms. Chamberlain's proposed relocation was made in good faith.

La. C.C.P. art. 1918 provides: "A final judgment shall be identified as such by appropriate language. When written reasons for the judgment are assigned, they shall be set out in an opinion separate from the judgment."

In LaGraize , the mother was admitted into a three-year Ph.D. program in Venice, Italy. The trial court permitted the mother's 3-year relocation with the minor child.

Pursuant to the November 2, 2017 consent judgment, the parties agreed to share joint legal custody, but did not designate a domiciliary parent.

The applicable version of La. C.C. art. 134, prior to its amendment in 2018, enumerates the following factors for the trial court to consider in determining the best interest of the child:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.

In support of Mr. Cooper's testimony, both Mr. Cooper's mother and step-sister testified regarding Ms. Chamberlain's indifference to fostering the child's relationships with his paternal family members. Although their testimony went uncontested, the trial court questioned their credibility. Meanwhile, without supporting testimony from her mother, the trial court accepted Ms. Chamberlain's self-serving testimony that her mother would move with her to Nashville to assist in childcare without hesitation.